MARY C. DOLLARHIDE (Bar No. 138441)
mary.dollarhide@dlapiper.com
DLA PIPER LLP (US)
4365 Executive Drive, Suite 1100
San Diego, CA  92121-2133
Tele:  858.677.1400
Fax:   858.677.1401

KATHRYN RILEY GRASSO (Bar No. 211187)
kathryn.riley@dlapiper.com
KEVIN HARLOW (Bar No. 265565)
kevin.harlow@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1799
San Diego, CA  92101-4297
Tele:  619.699.2700
Fax:   619.699.2701

Attorneys for Defendants
XPO LOGISTICS CARTAGE, LLC and
JEFFREY TRAUNER

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ANGEL OMAR ALVAREZ, an individual; ALBERTO RIVERA, an individual; and FERNANDO RAMIREZ, an individual; JUAN ROMERO, an individual; and JOSE PAZ, an individual; on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>XPO LOGISTICS CARTAGE, LLC dba XPO LOGISTICS, a Delaware Limited Liability Company; XPO CARTAGE, INC. dba XPO LOGISTICS, a Delaware corporation; JEFFREY TRAUNER, an individual; and DOES 1-100, inclusive,<br><br>        Defendants. | CASE NO.  2:18-cv-3736<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT BY DEFENDANTS XPO LOGISTICS CARTAGE, LLC AND JEFFREY TRAUNER**<br><br>Complaint Filed: February 26, 2018 |

EAST\153408507.4

DEF'S NOTICE OF REMOVAL  CASE NO. 2:18-CV-3736_____

## **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ...................................................................................... 1
II. SUMMARY OF ALLEGATIONS ............................................................ 1
III. JOINDER .................................................................................................. 2
IV. BASIS FOR JURISDICTION .................................................................. 2
V. THE PARTIES' DIVERSITY OF CITIZENSHIP ................................... 2
VI. CLASS SIZE ............................................................................................ 3
VII. THE AMOUNT IN CONTROVERSY .................................................... 4
    A. Plaintiffs' Minimum Wage Claim. ................................................. 5
    B. Alleged Missed Meal and Rest Period Claims. .............................. 6
    C. Alleged Failure to Furnish Compliant Wage Statements and Maintain Accurate Payroll Records. ............................................... 8
    D. Plaintiffs' Claim for Reimbursement of Business Expenses ......... 9
    E. Plaintiffs' Claim for Waiting Time Penalties and Unfair Business Practices. ......................................................................... 10
    F. Demand for Injunctive Relief ....................................................... 11
    G. Attorneys' Fees. ............................................................................ 11
VIII. COMPLIANCE WITH REQUIREMENTS FOR REMOVAL .............. 12

# TABLE OF AUTHORITIES

**Page**

**CASES**

*Anderson v. Watts*,
   138 U.S. 694, 11 S. Ct. 449, 34 L. Ed. 1078 (1891) .............................................. 3

*Galt G/S v. JSS Scandinavia*,
   142 F.3d 1150 (9th Cir. 1998) ............................................................................ 11

*Hollinger v. Home State Mut. Ins. Co.*,
   654 F.3d 564 (5th Cir. 2011) ................................................................................ 3

*In re Rite Aid Corp. Sec. Litig.*,
   396 F.3d 294 (3d Cir. 2005) ............................................................................... 11

*Lim v. Helio, LLC*,
   No. CV 11-9183 PSG, 2012 WL 359304 (C.D. Cal. Feb. 2, 2012) .................... 11

*Mejia v. DHL Express*,
   No. CV 15-890-GHK, 2015 WL 2452755 (C.D. Cal. May 21,
   2015) .................................................................................................................... 9

*Miranda v. Pacer Cartage, Inc.*,
   No. D069425, 2017 WL 3725521 (Cal. Ct. App. Aug. 30, 2017),
   *review denied* (Nov. 29, 2017) .......................................................................... 10

*Mitchell v. Bank of Am. Corp.*,
   No. CV 17-6288 FMO, 2017 WL 4216562 (C.D. Cal. Sept. 21,
   2017) .................................................................................................................... 6

*Molnar v. 1-800-Flowers.com, Inc.*,
   No. CV 08-0542 CAS, 2009 WL 481618 (C.D. Cal. Feb. 23, 2009) ................ 11

*Murphy v. Kenneth Cole Prods, Inc.*,
   40 Cal. 4th 1094 (2007) ....................................................................................... 7

*NewGen, LLC v. Safe Cig, LLC*,
   840 F.3d 606 (9th Cir. 2016) ................................................................................ 3

*Rippee v. Boston Market Corp.*,
   408 F. Supp. 2d 982 (S.D. Cal. 2005) ................................................................ 11

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Sanchez v. Monumental Life Ins. Co.*,
　102 F.3d 398 (9th Cir. 1996) ................................................................................. 5

*Tompkins v. Basic Research LL*,
　No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316 (E.D. Cal.
　Apr. 22, 2008) ...................................................................................................... 12

*United Parcel Serv., Inc. v. Super. Ct.*,
　196 Cal. App. 4th 57 (2011) ................................................................................. 7

**STATUTES**

28 U.S.C. § 1332(d) ............................................................................................ 1, 2, 4

28 U.S.C. § 1441 ..................................................................................................... 1, 3

28 U.S.C. § 1446(a) .................................................................................................. 12

28 U.S.C. § 1446(b) ............................................................................................. 2, 12

28 U.S.C. § 1446(d) .................................................................................................. 13

Cal. Bus. & Prof. Code § 17200 *et seq.* .................................................................... 1

Cal. Civ. Proc. Code § 340(a) .................................................................................... 9

Cal. Civ. Proc. Code § 382 ......................................................................................... 2

Cal. Lab. Code §§ 201-203 ........................................................................................ 1

Cal. Lab. Code § 226 ............................................................................................. 1, 9

Cal. Lab. Code § 226(a) ............................................................................................. 9

Cal. Lab. Code § 226(e) ............................................................................................. 9

Cal. Lab. Code § 226.7 .......................................................................................... 1, 7

Cal. Lab. Code § 2698 *et seq.* ................................................................................... 1

Cal. Lab. Code § 2802 ..................................................................................... 1, 9, 10

# TABLE OF AUTHORITIES
### (continued)

**Page**

**OTHER AUTHORITIES**

Comm. on the Judiciary, S. Rep. No. 109-14 (2005) .................................................. 4

Fed. R. Civ. P. 23 ........................................................................................................ 2

## I.  INTRODUCTION

Defendants XPO Logistics Cartage, LLC and Jeffrey Trauner (collectively, "Defendants") remove the above captioned action from state court to federal court. At the time the Complaint was filed, and currently, Defendant XPO Logistics Cartage, LLC ("XPO"), on the one hand, and Plaintiffs Angel Omar Alvarez, Alberto Rivera, Fernando Ramirez, Juan Romero, and Jose Paz, on the other hand, are citizens of different states; the amount in controversy exceeds $5,000,000; and there are over 100 alleged class members.  28 U.S.C. §§ 1332(d)(2)(A), (5)(B)-(6) and 1441(a)-(b)(1).

## II.  SUMMARY OF ALLEGATIONS

1. On or about February 26, 2018, Plaintiffs Angel Omar Alvarez, Alberto Rivera, and Fernando Ramirez commenced an action against Defendants in the Superior Court of California, County of Los Angeles, in their complaint entitled *Angel Omar Alvarez, et al., on behalf of themselves and all others similarly situated, Plaintiffs, v. XPO Logistics Cartage LLC dba XPO Logistics, et al., Defendants*, Case No. BC695123 ("Complaint").  On or about February 28, 2018, Plaintiffs filed a First Amended Complaint ("FAC") and added Plaintiffs Juan Romero and Jose Paz as parties to the lawsuit.

2. The Complaint alleges eight causes of action: (i) failure to pay minimum wage; (ii) failure to provide meal periods in violation of California Labor Code § 226.7; (iii) failure to provide rest periods in violation of California Labor Code § 226.7; (iv) failure to reimburse employee business expenses under California Labor Code § 2802; (v) failure to provide accurate, itemized wage statements in violation of California Labor Code § 226; (vi) failure to pay wages owed at termination in violation of California Labor Code §§ 201-203; (vii) unfair competition in violation of California Business and Professions Code § 17200 *et seq.*; and (viii) a claim for penalties under California's Private Attorneys General Act, California Labor Code § 2698 *et seq.*

3.      Plaintiffs never served Defendant XPO with the Original Complaint. Plaintiffs served XPO with the Summons and the FAC on April 3, 2018.

4.      Plaintiffs never properly served Defendant Jeffrey Trauner, an individual, with either the Original Complaint or the FAC.  XPO's counsel, who also represents Defendant Trauner, offered to accept service on his behalf effective April 18, 2018.

### III.     JOINDER

5.      Defendants are not aware of any other defendant having been served with a copy of the Original Complaint or the FAC. 28 U.S.C. § 1446(b)(2)(A).

### IV.     BASIS FOR JURISDICTION

6.      The district courts of the United States have original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which any member of a class of plaintiffs is a citizen of a State different from any defendant." Class Action Fairness Act of 2005 ("CAFA"), under 28 U.S.C. § 1332(d)(2)(A). CAFA defines "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by one or more representative persons as a class action." 28 U.S.C. § 1332(d)(1)(B).  The FAC is styled as a "class action" and was filed in the state courts of California, which authorizes class actions under Section 382 of the California Code of Civil Procedure.  In acknowledging that this action has been filed as a "class action" for CAFA purposes, Defendants do not concede that any such class as proposed by Plaintiffs will or does meet the requirements for class certification under the Federal Rules.

### V.     THE PARTIES' DIVERSITY OF CITIZENSHIP

7.      The FAC alleges that Plaintiffs Angel Omar Alvarez and Juan Romero are residents of Los Angeles County, California (FAC ¶¶ 7, 10); that Plaintiffs Alberto Rivera and Fernando Ramirez are residents of San Diego County,

California (FAC ¶¶ 8-9); and that Plaintiff Jose Paz is a resident of San Bernardino, California (FAC ¶ 11). According to the Ninth Circuit Court of Appeals, "[i]t is a longstanding principle that the place where a person lives is taken to be his domicile until facts adduced establish the contrary." *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 614 (9th Cir. 2016); citing *Anderson v. Watts*, 138 U.S. 694, 706, 11 S. Ct. 449, 34 L. Ed. 1078 (1891) and *Hollinger v. Home State Mut. Ins. Co.*, 654 F.3d 564, 571 (5th Cir. 2011) (internal quotation marks omitted). Therefore, for purposes of establishing diversity jurisdiction, all Plaintiffs identified by name in the FAC are citizens of California.

8. Defendant XPO is a limited liability company whose sole member is XPO Intermodal Solutions, Inc. That corporation, in turn, has been incorporated under the laws of the state of Ohio with its principal place of business and corporate headquarters in Dublin, Ohio. Defendant XPO is therefore a citizen of Ohio, but not of California. *See* concurrently filed Declaration of Riina Tohvert.

9. All potential "Doe" defendants shall be disregarded for purposes of removal. 28 U.S.C. § 1441(b)(1).

## VI. CLASS SIZE

10. Plaintiffs' FAC alleges that there are "in excess of 150 members of the proposed class." FAC ¶ 38. That number that will presumably grow as litigation advances and more drivers (i.e., putative class members) enter into independent contractor hauling agreements with XPO.

11. In connection with their claim for waiting time penalties, Plaintiffs propose a subclass for all putative class members who "are no longer employed by" XPO. FAC ¶ 37. Plaintiffs do not propose any other subclasses associated with their other causes of action, implying that they allege all but the waiting-time violations to have been inflicted on all the putative class members.

/////

/////

## VII. THE AMOUNT IN CONTROVERSY

12. The amount in controversy requirement is satisfied, because Plaintiffs are seeking an aggregate amount of damages that exceeds $5,000,000, exclusive of interest and attorneys' fees and costs.[1]

13. Under CAFA, individual class members' alleged claims are aggregated to determine if the amount in controversy exceeds $5,000,000. 28 U.S.C. § 1332(d)(6). Congress intended federal jurisdiction to be appropriate under CAFA "if the value of the matter in litigation exceeds $5,000,000 either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief, or declaratory relief)." Comm. on the Judiciary, S. Rep. No. 109-14, at 42 (2005).

14. Any doubts regarding the maintenance of interstate class actions in state or federal court should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case…. Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provisions should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.").

15. To establish that the alleged amount in controversy exceeds the jurisdictional amount, a defendant must establish that it is more likely than not that
/////

---

[1] Defendants acknowledge only that the amount put in controversy by Plaintiffs' allegations exceeds $5,000,000 and in no way concede that of any of Plaintiffs' allegations have merit, that any class proposed by Plaintiffs may properly be certified, or that Plaintiffs are entitled to relief in that amount or any amount whatsoever. Defendants expressly deny any allegations of wrongdoing and reserve all rights to assert any and all applicable defenses in this matter.

the amount in controversy exceeds $5,000,000. *Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 404 (9th Cir. 1996).

16. Here, Defendants are able to establish that the alleged amount in controversy exceeds the jurisdictional threshold, based, as a matter of law, on the complaint's allegations.

### A.     Plaintiffs' Minimum Wage Claim.

17. Plaintiffs' first cause of action alleges that over 150 putative class members are not paid for "additional time" outside of drive time "that they are under the control of Defendants and suffered or permitted to work, including, but not limited to, the time drivers spend waiting at the XPO Defendants' facility to be given assignments by dispatchers, meeting with the XPO Defendants' Safety Department personnel, conducting pre-trip and post-trip truck and safety inspections mandated by Defendants, and filling out mandatory paperwork, including without limitation, time logs, manifests, lease paperwork, and pre-trip and post-trip inspections." Plaintiffs do not specify how many hours per day they spend on these activities, and Defendants make no admissions here as to such hours.

18. However, less than a year before Plaintiffs' complaint was filed, the Department of Labor Standards Enforcement found that a group of California XPO drivers[2] alleging similar misclassification-based claims spent between four and five hours per work day on similar (non-driving) activities. *See* Order, Decision or Award of the Labor Commissioner, *Gaitan, et al., v. XPO Cartage, Inc.* (hereinafter "*Gaitan* Order") (attached to the concurrently filed Request for Judicial Notice).[3] Plaintiffs here seek to represent a class in which the individual *Gaitan* plaintiffs

---

[2] The drivers were engaged by XPO Cartage, Inc., an entity that no longer exists but which the FAC acknowledges to be the predecessor company to XPO Logistics Cartage, LLC. Both entities are named as defendants in this case.

[3] Defendant XPO Cartage, Inc. did not present contrary evidence at the hearing that precipitated the Order; thus, the matter was decided on the plaintiffs' uncontested allegations alone.

would ostensibly be members according to the definition put forth in the FAC, and Plaintiffs have further represented that their experiences are representative of those of other class members as defined in their FAC. It is therefore reasonable to use the *Gaitan* plaintiffs' awards as a barometer for the amount in controversy in this case where their allegations overlap with those of Plaintiffs here.

19. Alleged lost wages are calculated up to the date of removal. *Mitchell v. Bank of Am. Corp.*, No. CV 17-6288 FMO (PLAx), 2017 WL 4216562, at *2 (C.D. Cal. Sept. 21, 2017). At all times during the relevant period of April 30, 2016 to May 3, 2018, the minimum wage in California was $10.00 per hour.

20. Thus, if it is assumed (which Defendants do not concede) that Plaintiffs' alleged uncompensated non-driving activities constituted just four hours per workday during the relevant time period, and that the class members worked 261 days per year, then the total amount in controversy for Plaintiffs' minimum wage claim alone would be approximately **$3,152,880** (261 annual days worked × 2 years × 4 uncompensated work-hours per day × $10.00 per hour × 151 class members ).

21. Moreover, if it is assumed (which Defendants again do not concede) that Plaintiffs' alleged uncompensated non-driving activities constituted five hours per workday during the relevant time period (which the DLSE found to be the case for three of the four *Gaitan* plaintiffs) then the total amount in controversy for Plaintiffs' minimum wage claim alone would be approximately **$3,941,100** (261 annual days worked × 2 years × 5 uncompensated work-hours per day × $10.00 per hour × 151 class members ).

B. **Alleged Missed Meal and Rest Period Claims.**

22. Plaintiffs' second and third causes of action allege that the putative class members are entitled to one hour of premium pay for each alleged meal and rest period violation during the four years preceding the filing of the Complaint.

/////

23. While Defendant disputes Plaintiffs' meal and rest period allegations, Cal. Labor Code Section 226.7 clearly provides a penalty of one hour of pay for each day in which a meal or rest period is not properly provided. California law defines this extra hour of pay as a wage premium, not a penalty, for statute of limitations purposes. *Murphy v. Kenneth Cole Prods, Inc.*, 40 Cal. 4th 1094, 1114 (2007). The maximum penalty in any <u>single day is thus two hours of pay</u>. *See United Parcel Serv., Inc. v. Super. Ct.*, 196 Cal. App. 4th 57, 65 (2011).

24. Plaintiffs are silent as to the total amount of alleged meal periods and rest periods that the putative class members were allegedly denied, but the FAC does state that "Defendants did not implement and have no policy or practice at all for providing meal and rest breaks to Drivers" and that "Defendants did not implement, nor have in place, any policy or practice at all of paying premium wages to Drivers for missed meal or rest breaks." FAC ¶ 35. Plaintiffs further allege that "Defendants have systematically failed and/or refused to provide Class Members, including Plaintiffs, with an uninterrupted, off-duty meal break of at least 30 consecutive minutes in duration for all shifts in excess of 5 hours." *Id.* ¶ 56.

25. As to rest periods, Plaintiff alleges that Defendants "have systematically failed and/or refused to authorize or permit Class Members, including Plaintiffs, to take an uninterrupted 10-minute break for every 4 hours worked or major fraction thereof." FAC ¶ 61.

26. Since all putative class members would be governed by the allegedly deficient meal and rest period policies and practices of Defendant throughout the limitations period, for the purpose of this removal, it is assumed that Plaintiffs intend to seek maximum penalties related to missed meal and rest periods for all putative class members for all workdays during the entirety of the relevant period. Other plaintiffs in factually similar cases have done the same. *See Gaitan* Order at 25-26.

/////

27.     Plaintiffs do not state the hourly rate at which they believe their meal and rest period penalties ought to be paid.  However, the putative class members were actually paid on a piece-rate basis.  Thus, each class member's hourly rate is properly calculated by dividing the total number of gross earnings during the claim period by the total days worked to obtain the daily rate.  The daily rate is then divided by the average number of hours worked per day to arrive at the driver's hourly rate. *See Gaitan* Order at 26-27.  In the *Gaitan* case, the Labor Commissioner applied this calculation and determined that the four plaintiffs' average hourly rates (for purposes of calculating their meal and rest period penalties) were, respectively, $22.89, $24.23, $29.08, and $42.64. *Id.*

28.     Here, assuming that the entire putative class worked roughly 261 days per year at an average hourly rate of just $20.00 per hour, and that there was at least one meal *and* at least one rest period violation per class member workday (which Defendants do not concede), then the total amount in controversy for Plaintiffs' meal and rest period claims would be **$3,152,880** (261 annual work days × 2 years × 2 penalty payments owed per workday × $20.00 per penalty × 151 class members).

29.     Thus, assuming for purposes of this Notice that the putative class experienced (a) four to five uncompensated hours per day per class member for non-driving time, and (b) two meal and rest period violations per day per class member as implied by Plaintiffs' FAC, then the amount in controversy of this action exceeds $5,000,000.

### C.  Alleged Failure to Furnish Compliant Wage Statements and Maintain Accurate Payroll Records.

30.     Plaintiffs' fifth cause of action, alleging failure to accurate and itemized wage statements, eliminates any question that the amount in controversy is satisfied.

/////

31. Plaintiffs allege that Defendants "knowingly and intentionally failed to comply with Labor Code Section 226(a) on each and every wage statement that should have been provided to Plaintiffs and other Class Members," FAC ¶ 70, and that Defendants injured Plaintiffs by making it "difficult to calculate the unpaid wages earned and expenditures not indemnified by Defendants." FAC ¶ 71.

32. While Defendants deny this charge, for purposes of the amount in controversy, Cal. Labor Code Section 226(e) must be considered. That section provides that an employee suffering an injury as a result of an intentional failure by an employer to provide accurate wage statements is entitled to a penalty of $50 for the initial pay period in which the violation occurred, and $100 for each violation in a subsequent pay period, not to exceed the aggregate amount of $4,000 per employee. Claims under Section 226 are subject to a one-year statute of limitations. Cal. Civ. Proc. Code § 340(a).

33. If one assumes that during the one-year period preceding the filing of the Complaint (February 26, 2017 through February 26, 2018), Defendant employed approximately 100 individuals who qualified for the maximum amount in statutory penalties for wage statement violations, then the purported amount in controversy for this claim is at least $400,000 (100 class members × $4,000 per class member).

34. Plaintiffs do not allege that the class members are entitled to less than the maximum $4,000 penalty payment for this claim. As such, "[i]t is not unreasonable to assume that, with this many violations alleged, every one of the wage statements issued during the Class Period could potentially have been noncompliant." *Mejia v. DHL Express*, No. CV 15-890-GHK (JCx), 2015 WL 2452755, at *5 (C.D. Cal. May 21, 2015).

**D.   Plaintiffs' Claim for Reimbursement of Business Expenses**

35. Plaintiffs' fourth cause of action is a claim for reimbursement of business expenses under Section 2802 of the California Labor Code. As is standard

industry practice, XPO drivers are expected to bear the cost of various expenses associated with driving and maintaining their trucks. To that end, virtually all of XPO's drivers are regularly advanced thousands of dollars' worth of expenses, including fuel and insurance, which are subsequently deducted from their settlement payments. Plaintiffs here seek reimbursement of these and other deductions. While Defendants maintain that such deductions are lawful, the DLSE awarded the four plaintiffs in the *Gaitan* case (again, all of whom would apparently qualify as class members in this case under Plaintiffs' definition) the following amounts as allegedly "unlawfully deducted wages":

- $52,710.89
- $51,138.88
- $95,654.40
- $100,047.18

*Gaitan* Order at 22-23. Also, in *Miranda v. Pacer Cartage, Inc.*, No. D069425, 2017 WL 3725521, at *1 (Cal. Ct. App. Aug. 30, 2017), *review denied* (Nov. 29, 2017), another class action by drivers against a predecessor company of XPO Logistics Cartage, LLC, the California Court of Appeal upheld an aggregate award of more than $2,000,000 for just seven plaintiffs for their claim of unreimbursed business expenses alone.

36.  Plaintiffs' claim for class-wide reimbursement for deductions under Section 2802 of the California Labor Code thus further establishes that the amount in controversy exceeds $5,000,000.

### E. Plaintiffs' Claim for Waiting Time Penalties and Unfair Business Practices.

37.  Since Defendants have established that the purported amount in controversy clearly exceeds the $5,000,000 threshold for CAFA jurisdiction, the complicated calculus of estimating an amount in controversy for Plaintiffs' sixth and seventh causes of action (for waiting time penalties and unfair business

1 practices) is unnecessary. Whatever the number, these claims necessarily would
2 increase the number, further establishing that the amount in controversy exceeds the
3 CAFA threshold.

### F. Demand for Injunctive Relief

38. Plaintiffs' Prayer for Relief also requests "preliminary and permanent injunctions enjoining and restraining Defendants from continuing the unfair and unlawful business practices set forth above, and requiring the establishment of appropriate and effective policies, procedures, and practices in place to prevent future violations[.]" Since the crux of Plaintiffs' complaint is the alleged misclassification of Plaintiffs and the putative class as independent contractors, such injunctive relief would presumably include an order requiring Defendants to reclassify Plaintiffs and the entire putative class as employees. If granted, such relief would require Defendants to undertake a massive overhaul of their systems, processes, and core business model at substantial cost to XPO. Such costs are considered in determining whether the amount in controversy is satisfied. *See Rippee v. Boston Market Corp.*, 408 F. Supp. 2d 982, 984 (S.D. Cal. 2005).

### G. Attorneys' Fees.

39. Plaintiffs' Prayer for Relief seeks attorneys' fees. While Defendants assert that Plaintiffs should recover no attorneys' fees, even contested attorneys' fees are included in ascertaining the purported amount in controversy. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998). Courts have accepted 25% fee estimates for removal purposes. *See, e.g.*, *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 303 (3d Cir. 2005) (noting a finding by the Federal Judicial Center of fees recoveries ranging from 27% to 30% for class actions resolved or settled over a four-year period); *Lim v. Helio, LLC*, No. CV 11-9183 PSG (PLAx), 2012 WL 359304, *3 (C.D. Cal. Feb. 2, 2012) (finding that in a CAFA removal, the defendant properly included attorneys' fees in the amount in controversy at 25% of the potential damage award); *Molnar v. 1-800-Flowers.com, Inc.*, No. CV 08-0542

CAS (JCx), 2009 WL 481618, *5 (C.D. Cal. Feb. 23, 2009) (holding that in removal, defendant fairly estimated attorneys' fees as 25% of the compensatory damages); *Tompkins v. Basic Research LL*, No. CIV. S-08-244 LKK/DAD, 2008 WL 1808316, at *4 (E.D. Cal. Apr. 22, 2008) (granting CAFA removal, and holding that, for purposes of ascertaining the amount in controversy, 25% of the common fund of total damages was a "fair estimate of attorneys' fees").

40. Here, attorneys' fees can be plausibly assumed to be based on 25% of total alleged (and contested) damages/penalties established thus far in the preceding paragraphs. The aggregate amount, would, therefore, be at least $6,705,760 (**$3,152,880** for unpaid minimum wages + **$3,152,880** for meal and rest claims + **$400,000** for wage statement claims), resulting in <u>at least</u> an additional $1,676,440 in controversy for attorneys' fees.  This does not include any attorneys' fees associated Plaintiffs' claims for unreimbursed business expenses, waiting time penalties, or unfair competition claims.

## VIII.  **COMPLIANCE WITH REQUIREMENTS FOR REMOVAL**

41. Pursuant to 28 U.S.C. § 1446(a), Defendants attach the Complaint, the FAC, and all documents served therewith as **Exhibit A**.  Defendants attach their Answer, filed in state court on May 2, 2018, as **Exhibit B**.  Defendants attach their cross-complaint, filed in state court on May 2, 2018, as **Exhibit C**.  There is no other process, pleading, or order in the State Court's file that has been served on Defendants up to the date of filing this Notice of Removal.

42. In accordance with 28 U.S.C. § 1446(b), this Notice is timely filed with this Court.  Under Section 1446(b), "a notice of removal may be filed within thirty days after" the defendant receives the relevant pleading from which removability may be ascertained.  Defendant XPO was served with Plaintiffs' FAC on April 3, 2018, and defense counsel accepted service on behalf of Defendant Trauner on April 18, 2018 (Defendants were not served with any previous version of the complaint).  Accordingly, this Notice is timely.

43. As required in 28 U.S.C. § 1446(d), Defendants will provide written notice of the filing of this Notice of Removal to Plaintiffs' attorney of record, and will promptly file a copy of this Notice of Removal with the Superior Court of the State of California in and for the County of Los Angeles.

Dated: May 3, 2018

DLA PIPER LLP (US)


By /s/ Mary C. Dollarhide
MARY C. DOLLARHIDE
KATHRYN RILEY GRASSO
KEVIN HARLOW

Attorneys for Defendant
XPO LOGISTICS CARTAGE, LLC and
JEFFREY TRAUNER