**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (SBN 122397)
KARL P. EVANGELISTA (SBN 250685)
500 N. Brand Boulevard, Suite 980
Glendale, California 91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

**BUSH GOTTLIEB, ALC**
JULIE GUTMAN DICKINSON (SBN 148267)
IRA L. GOTTLIEB (Bar No. 103236)
KATHERINE M. TRAVERSO (SBN 290559)
KIEL B. IRELAND (SBN 316287)
801 N. Brand Boulevard, Suite 950
Glendale, California 91203
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANGEL OMAR ALVAREZ, an individual; ALBERTO RIVERA, an individual; FERNANDO RAMIREZ, an individual; JUAN ROMERO, an individual; and JOSE PAZ, an individual; on behalf of themselves and others similarly situated<br><br>Plaintiffs,<br><br>vs.<br><br>XPO LOGISTICS CARTAGE, LLC dba XPO LOGISTICS, a Delaware Limited Liability Company; XPO CARTAGE, INC. dba XPO LOGISTICS, a Delaware corporation, JEFFREY TRAUNER, an individual; and DOES 1 through 100, inclusive,<br><br>Defendants. | CASE NO. 2:18-cv-3736-SJO-E<br><br>**Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings**<br><br>**Judge: Hon. S. James Otero**<br>**Date: October 15, 2018**<br>**Time: 10:00 AM**<br>**Crtrm.: 10C** |

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

633927.5 10999-27003

Opp'n to Mtn. Judg. on the Pldgs.

# <u>TABLE OF CONTENTS</u>

**<u>Page</u>**

I.   INTRODUCTION ................................................................................................ 1

II.  STATEMENT OF THE CASE ......................................................................... 2

    A.   Legal and Regulatory Background ........................................................ 2

    B.   Factual and Procedural Background ...................................................... 4

III. ARGUMENT ...................................................................................................... 5

    A.   Plaintiffs' Causes of Action Are Not Preempted ................................. 6

        1.   The FAAAA Does Not Preempt Plaintiffs' Wage-Order
            Causes of Action ......................................................................... 6

            (a)   Defendants' FAAAA Argument Would Have Little
                 Effect on This Case ......................................................... 6

            (b)   The FAAAA Does Not Preempt the ABC Test ................. 8

            (c)   Even if the FAAAA Preempted Prong B of the ABC
                 Test, That Prong Is Severable .......................................... 11

        2.   The California Labor Code Does Not Violate the Dormant
            Commerce Clause ....................................................................... 13

        3.   The Truth in Leasing Regulations Do Not Preempt
            Plaintiffs' Fourth Cause of Action ............................................ 14

    B.   Defendants' Estrada Contention is Premature ...................................... 18

    C.   Defendants Have Not Shown That a Stay Is Justified Here ................. 19

IV.  CONCLUSION ................................................................................................... 23

B̲ᴜꜱʜ G̲ᴏᴛᴛʟɪᴇʙ
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3 ........................................................................... 13

**Cases**

*Aguiar v. Superior Court*,
    87 Cal. Rptr. 3d 813 (Ct. App. 2009) ................................................... 12

*Alaska Airlines, Inc. v. City of Long Beach*,
    951 F.2d 977 (9th Cir. 1991) ............................................................... 13

*Allied Concrete & Supply Co. v. Baker*,
    __ F.3d __, Nos. 16-56546, 17-55343, 17-55503, 2018 WL 4495955
    (9th Cir. Sept. 20, 2018) ....................................................................... 8

*Am. Trucking Ass'ns v. City of Los Angeles*,
    559 F.3d 1046 (9th Cir. 2009) ............................................................... 9

*Cal. Trucking Ass'n v. Su*,
    __ F.3d __, No. 17-55133, 2018 WL 4288953 (9th Cir. Sept. 10
    2018) .............................................................................................. 6, 7, 8

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ........................................................... 15, 17

*Chamber of Commerce of U.S. v. Brown*,
    554 U.S. 60 (2008) ............................................................................... 14

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ............................................................................. 20

*Clinton v. Jones*,
    520 U.S. 681 (1997) ............................................................................. 21

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962) ........................................................... 21, 22

*Costello v. BeavEx, Inc.*,
    810 F.3d 1045 (7th Cir. 2016) ............................................................... 9

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Cotter v. Lyft, Inc.*,
　　60 F. Supp. 3d 1067 (N.D. Cal. 2015)..................................................................4

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
　　498 F.3d 1059 (9th Cir. 2007)...................................................................21, 22

*DiFiore v. Am. Airlines, Inc.*,
　　646 F.3d 81 (1st Cir. 2011) ...............................................................................11

*Dilts v. Penske Logistics, LLC*,
　　769 F.3d 637 (9th Cir. 2014) .........................................................................8, 11

*Dynamex Operations W., Inc. v. Superior Court*,
　　416 P.3d 1 (Cal. 2018)...............................................................................*passim*

*Estrada v. FedEx Ground Package Sys., Inc.*,
　　64 Cal. Rptr. 3d 327 (Ct. App. 2007) ....................................................18, 19, 23

*Fort Halifax Packing Co. v. Coyne*,
　　482 U.S. 1 (1987) ..............................................................................................15

*Fox v. Transam Leasing, Inc.*,
　　839 F.3d 1209 (10th Cir. 2016) ...........................................................16, 17, 18

*Gregg v. Hawaii*,
　　870 F.3d 883 (9th Cir. 2017) ...............................................................................5

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
　　896 F.2d 1542 (9th Cir. 1989) ..............................................................................5

*People ex rel. Harris v. Pac Anchor Transp., Inc.*,
　　329 P.3d 180 (Cal. 2014)..............................................................................9, 10

*Janken v. GM Hughes Elecs.*,
　　53 Cal. Rptr. 2d 741 (Ct. App. 1996) ................................................................16

*Landis v. N. Am. Co.*,
　　299 U.S. 248 (1936) ....................................................................................19, 22

*Lockyer v. Mirant Corp.*,
　　398 F.3d 1098 (9th Cir. 2005) ....................................................................21, 22

*Lodge 76, Int'l Ass'n of Machinists v. Wisc. Emp't Relations Comm'n*,
　　427 U.S. 132 (1976) ..........................................................................................14

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Mass. Delivery Ass'n v. Coakley*,
   769 F.3d 11 (1st Cir. 2014) ................................................................. 11

*McClellan v. I-Flow Corp.*,
   776 F.3d 1035 (9th Cir. 2015) ...................................................... 15, 17

*Medtronic, Inc. v. Lohr*,
   518 U.S. 470 (1996) ..................................................................... 17, 18

*Nat'l Broiler Council v. Voss*,
   44 F.3d 740 (9th Cir. 1994) ................................................................ 12

*New Prime Inc. v. Oliveira*,
   138 S. Ct. 1164 (2018) ............................................................. 20, 21, 22

*POET, LLC v. State Air Res. Bd.*,
   218 Cal. Rptr. 3d 681 (Ct. App. 2017) .............................................. 12

*Remington v. J.B. Hunt Transp., Inc.*,
   Nos. 15-10010, 15-13019, 2016 WL 4975194 (D. Mass. Sept. 16,
   2016) ............................................................................................. 16, 17

*Renteria v. K&R Transp., Inc.*,
   No. 98 CV 290, 1999 WL 33268638 (C.D. Cal. Feb. 23, 1999) ........... 17, 18

*Rodriguez v. RWA Trucking Co.*,
   190 Cal. Rptr. 3d 663 (Ct. App. 2013) .............................................. 16

*Rowe v. N.H. Motor Transp. Ass'n*,
   552 U.S. 364 (2008) ........................................................................ 8, 11

*S.G. Borello & Sons Inc. v. Dep't of Indus. Relations*,
   769 P.2d 399 (Cal. 1989) ........................................................ 2, 7, 8, 13

*Sakkab v. Luxottica Retail N. Am., Inc.*,
   803 F.3d 425 (9th Cir. 2015) ............................................................. 16

*Santa Barbara Sch. Dist. v. Superior Court*,
   530 P.2d 605 (Cal. 1975) ................................................................... 12

*Schenley Affiliated Brands Corp. v. Kirby*,
   98 Cal. Rptr. 609 (Ct. App. 1971) ..................................................... 12

*Schwann v. FedEx Ground Package Sys., Inc.*,
   813 F.3d 429 (1st Cir. 2016) ................................................. 10, 11, 13

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Smith v. Cardinal Logistics Mgmt. Corp.*,
No. 07-2104, 2009 WL 2588879 (N.D. Cal. Aug. 19, 2009) ............................ 19

*Smith v. Superior Court*,
137 P.3d 218 (Cal. 2006) ................................................................................. 22

*Stengel v. Medtronic Inc.*,
704 F.3d 1224 (9th Cir. 2013) ........................................................................... 6

*Sullivan v. Oracle Corp.*,
662 F.3d 1265 (9th Cir. 2011) ......................................................................... 13

*Valadez v. CSX Intermodal Terminals, Inc.*,
No. 15-cv-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017) ..................... 16

*Will v. Mich. Dep't of State Police*,
491 U.S. 58 (1989) .......................................................................................... 18

*Williams v. Superior Court*,
188 Cal. Rptr. 3d 83 (Ct. App. 2015) .............................................................. 16

*Yanez v. United States*,
63 F.3d 870 (9th Cir. 1995) ......................................................................... 5, 19

*Yong v. INS*,
208 F.3d 1116 (9th Cir. 2000) ......................................................................... 21

**Statutes**

9 U.S.C. § 1 .............................................................................................. 20, 22

29 U.S.C. § 203(e)(1) ......................................................................................... 3

29 U.S.C. § 203(g) .............................................................................................. 3

49 U.S.C. § 14501(c)(1) ...................................................................................... 6

Cal. Lab. Code § 226.8 ....................................................................................... 4

Cal. Lab. Code § 2802 ............................................................................. *passim*

Cal. Lab. Code § 2802(a) .................................................................................. 14

Cal. Lab. Code § 3551 ........................................................................................ 3

Cal. Lab. Code § 3553 ........................................................................................ 3

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Airline Deregulation Act,

    Pub. L. 95-504, 92 Stat. 1705 (1978) ..................................................... 9

California Private Attorneys General Act of 2004,

    Cal. Lab. Code §§ 2698-2699.5.................................................................. 10

Federal Aviation Administration Authorization Act of 1994,

    Pub. L. 103-305, 108 Stat. 1569..............................................................*passim*

Unfair Competition Law,

    Cal. Bus. & Prof. Code §§ 17200-17210 .............................................. 10

**Regulations and Regulatory History**

49 C.F.R. § 376.12.............................................................................. 6, 14

49 C.F.R. § 376.12(i) .............................................................................. 18

49 C.F.R. § 376.12(e) ............................................................................. 14

49 C.F.R. § 376.12(h)-(j) ........................................................................ 17

43 Fed. Reg. 29812 (1978) ..................................................................... 16

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

633927.5 10999-27003

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

## I.    __INTRODUCTION__

Despite wielding pervasive control over the work of their truck drivers, Defendants XPO Logistics Cartage, LLC; XPO Cartage, Inc. (collectively, XPO); and Jeffrey Trauner unlawfully misclassify Plaintiffs and putative class members as independent contractors.  This misclassification harms the public by denying the public fisc millions of dollars in payroll taxes, workers' compensation insurance payments and the like; it harms law-abiding competitors who cannot lawfully compete on labor costs with law breakers like Defendants; and it harms workers who are denied fundamental employment protections.  By this class action, Plaintiffs intend to make the workers harmed by Defendants' conduct whole while securing injunctive relief that will require Defendants to follow the law going forward.

Defendants have every right to use independent contractors, if those workers are truly independent contractors under the law.  But they have no right or "freedom" to violate the law by treating their workers like employees while misclassifying them as "independent contractors."  Defendants have been found to be using employees over and over again by state agencies, federal agencies and the courts, applying different standards and tests, yet Defendants willfully persist in misclassifying their drivers.[1]  Now, in this Court, Defendants have all but conceded that they cannot win on the merits, and instead contend that federal law protects them from the consequences of their continuing law breaking.  Defendants are

---

[1] *See, e.g.* Judgment, *Ramirez v. XPO Cartage Inc.*, No. 2:15-cv-3830 (C.D. Cal. May 16, 2017); Order Granting Final Approval of Class Action Settlement, Dismissing Action and Judgment, *Molina v. Pacer Cartage, Inc.*, No. 3:13-cv-2344 (S.D. Cal. Oct. 13, 2016); *XPO Cartage, Inc.*, Nos. 21-CA-150873, 21-CA-164483, 21-CA-175414, 21-CA-192602 (NLRB Div. of Judges Sept. 12, 2018); Order, Decision or Award, *Avalos v. XPO Cartage, Inc.*, No. 05-66468 (Cal. Labor Commissioner Apr. 14, 2017).  Those rulings and judgments are attached to Plaintiffs' request for judicial notice, filed concurrently with this opposition.

wrong.

Defendants argue that one prong of the ABC test, which is one test (of several) used to determine employment status in connection with one set of labor protections in California, is preempted by the Federal Aviation Administration Authorization Act of 1994 ("FAAAA"). But the ABC test is a law of general application that applies to all industries; it does not target trucking and it does not cause a "significant" impact on rates, routes or prices that would justify FAAAA preemption. Moreover, even if the ABC test were preempted, the test set out in *S.G. Borello & Sons Inc. v. Department of Industrial Relations*, 769 P.2d 399 (Cal. 1989), would apply to those claims, and the Ninth Circuit recently held that the FAAAA does not preempt the *Borello* test.

Defendants also argue that the federal Truth in Leasing regulations preempt section 2802 of the California Labor Code. But the Truth in Leasing regulations are intended to protect truckers from inequitable practices by motor carriers, and there is no evidence that section 2802 creates an obstacle to the "full purposes and objectives" of the law.

Finally, after counsel had met and conferred, submitted a joint discovery plan and attended a hearing before this Court, Defendants surprised Plaintiffs by seeking a stay of proceedings. The Supreme Court case that Defendants argue may impact this case has, in fact, little relevance here, and will only come into play, if ever, once this Court decides the merits of this case. There is no reason to depart from the schedule that this Court has already approved.

For those reasons and the reasons that follow, this Court should deny Defendants' motion for judgment on the pleadings.

## II.   STATEMENT OF THE CASE

### A.   Legal Background

The distinction between "employee" and "independent contractor" serves businesses well. Businesses can tailor their model to what they need in a certain

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1  project at a certain time.  Where workers genuinely are independent contractors, that

2  model allows the business to reduce costs and legal liability.  *See Dynamex*

3  *Operations W., Inc. v. Superior Court*, 416 P.3d 1, 5 (Cal. 2018).  And where the

4  business needs to exercise more control, the business can use employees, potentially

5  increasing costs but also increasing the business's right to oversee and direct the

6  work.  *See id.*

7      Given those tradeoffs, there is a natural incentive for any company to try to

8  have it both ways.  Where an employer treats its workers like employees –

9  exercising command and control over their work – but nevertheless classifies them

10  as independent contractors, it reaps the benefits of the independent contractor model

11  without shouldering its burdens.  *Dynamex*, 416 P.3d at 5.

12      While the practice of misclassifying employees as independent contractors is

13  a great deal for the business doing it, it exacts a heavy cost on the public, workers

14  and competitors.  Misclassification harms the public because it allows the business

15  to avoid paying payroll taxes, unemployment insurance, worker's compensation

16  insurance and the like, costing state and federal governments billions of dollars in

17  revenue.  *Dynamex*, 416 P.3d at 5-6.  It harms workers because they often have to

18  pay the ordinary costs of business that should be paid or reimbursed by the

19  employer; the workers also lose many workplace protections like rest breaks and

20  overtime compensation.  *Id.* at 6.  And misclassification harms law-abiding

21  competitors who must pay higher labor costs and taxes than their misclassifying

22  rivals.  *Id.*

23      With those stakes in mind, state and federal lawmakers and courts have

24  devised various tests to distinguish true independent contractors from true

25  employees – no matter how the employer purports to classify its workers.  *See, e.g.*,

26  29 U.S.C. § 203(e)(1), (g) (federal definition of "employee"); Cal. Lab. Code

27  §§ 3551, 3553 (California definition of "employee" and "independent contractor"

28  for worker's compensation determinations).

California has also established substantial penalties for businesses that misclassify their workers.  The business will be liable for the expenses it withheld from the employees, the meal and rest breaks it denied and the unlawfully low wages it paid.  *See, e.g.*, *Cotter v. Lyft, Inc.*, 60 F. Supp. 3d 1067, 1070 (N.D. Cal. 2015).  And if the business willfully misclassified its employees, it will be liable for additional civil penalties.  *See* Cal. Lab. Code § 226.8.  Those provisions help protect workers and the public, while undoing some of the damage that misclassification causes.

### B.    Factual and Procedural Background

Plaintiffs are a group of truck drivers who work or worked for Defendants XPO Logistics Cartage, LLC and XPO Cartage Inc. (collectively, "XPO").  Second Am. Cmplt. ¶¶ 1-2, ECF 26 [hereinafter "SAC"].  They allege that XPO, as managed by co-Defendant Jeffrey Trauner (collectively with XPO, "Defendants"), misclassified them as independent contractors while exercising pervasive control over their working conditions.  *Id.* ¶¶ 2-3, 26-32.

Specifically, XPO makes drivers sign contracts of adhesion under which the drivers purport to acknowledge their "independent contractor" status.  SAC ¶ 20.  In accordance with the drivers' purported status, XPO-driver contracts require drivers to pay business expenses like the cost of workers' compensation, and they deny drivers the benefits guaranteed to employees, such as eligibility for minimum wage protection, rest and meal breaks and the right to itemized wage statements.  *Id.* ¶¶ 20, 34.

But despite the contracts' language, XPO exerts so much control over the drivers' means and methods of work that the drivers are properly classified as employees.  XPO unilaterally decides what cargo drivers will transport, when and where they will transport it and how much they will get paid to transport it.  SAC ¶¶ 24-25, 28.  Drivers show XPO that they have completed their XPO-directed routes by filling out XPO-prepared forms.  *Id.* ¶ 23.  Drivers are subject to discipline

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

imposed by XPO, including suspension and termination when XPO believes they have disobeyed XPO policies and instructions.  *Id.* ¶ 24.  XPO drivers drive exclusively for XPO, using trucks designated with XPO insignia.  *Id.* ¶¶ 22, 26. XPO requires drivers to do daily truck inspections and subjects them to mandatory drug and alcohol testing.  *Id.* ¶ 3.

Plaintiffs filed a complaint in California state court on behalf of a putative class of similarly situated drivers, asserting eight state-law causes of action based on XPO's misclassification policies and practices.  *See* Notice Removal Civil Action Ex. A, at 14, ECF 1-1; SAC ¶¶ 46-95.  After Defendants removed the case to this Court, Plaintiffs filed the operative second amended complaint, and Defendants answered.  Answer Second Am. Cmplt., ECF 27.

The parties agreed upon a complete pre-trial litigation schedule.  *See* Mins. Mandatory Scheduling Conference, ECF 24.  A month later Defendants moved for judgment on the pleadings, and – without having mentioned it as part of the scheduling conference with Plaintiffs or before this Court – also moved for a stay of this litigation and discovery.  Mtn. J. Pleadings, ECF 31.  Plaintiffs oppose the motion for judgment on the pleadings and Defendants' request for a stay.

## III.  ARGUMENT

A district court may grant a motion for judgment on the pleadings only when "the moving party clearly establishes on the face of the pleadings that no material issue of fact remains to be resolved and that it is entitled to judgment as a matter of law."  *Yanez v. United States*, 63 F.3d 870, 872 (9th Cir. 1995).  In assessing the motion, the court must accept all factual allegations in the operative complaint as true and draw all reasonable inferences in the Plaintiffs' favor.  *Gregg v. Hawaii*, 870 F.3d 883, 887 (9th Cir. 2017).  But evidence outside the pleadings, such as the declarations attached to Defendants' motion for judgment on the pleadings, may not be considered.  *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1550 (9th Cir. 1989).  Defendants have not met their burden to establish that they

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   are clearly entitled to judgment on the pleadings here, nor have they shown that they

2   are entitled to a stay of this litigation.

### A.   Plaintiffs' Causes of Action Are Not Preempted

4   Defendants contend that some of Plaintiffs' claims are preempted by the

5   FAAAA, 49 U.S.C. § 14501(c)(1), invalidated by the Dormant Commerce Clause or

6   preempted by the Truth in Leasing regulations, 49 C.F.R. § 376.12.  As the party

7   asserting preemption, Defendants must "bear the considerable burden of overcoming

8   the starting presumption that Congress does not intend to supplant state law."

9   *Stengel v. Medtronic Inc.*, 704 F.3d 1224, 1227 (9th Cir. 2013) (quotation marks

10  omitted); *see also Cal. Trucking Ass'n v. Su*, __ F.3d __, No. 17-55133, 2018 WL

11  4288953, at *4 (9th Cir. Sept. 10 2018) (applying the presumption against

12  preemption to a defense of FAAAA preemption).  Defendants cannot satisfy that

13  considerable burden.

### 1.   The FAAAA Does Not Preempt Plaintiffs' Wage-Order Causes of Action

### (a)   Defendants' FAAAA Argument Would Have Little Effect on This Case

18  Defendants argue that the FAAAA preempts "prong B" of the ABC test for

19  distinguishing independent contractors from employees.  Mem. P. & A. Supp. Mtn.

20  J. Pleadings 2-7, ECF 31-1 [hereinafter "Mem."].  Defendants are wrong, but before

21  addressing the merits of their argument, it's important to note how limited the scope

22  of their objection is.

23  Defendants assert that prong B of the ABC test set out by the Supreme Court

24  of California in *Dynamex Operations West, Inc. v. Superior Court*, 416 P.3d 1 (Cal.

25  2018), is preempted by the FAAAA because prong B "prohibits a motor carrier from

26  classifying drivers as independent contractors."  Mem. 3-5.  As the Ninth Circuit

27  recently pointed out, however, the *Dynamex* ABC test applies *only* to claims based

28  on the wage orders promulgated by the California Industrial Welfare Commission

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

("IWC"). *Cal. Trucking*, 2018 WL 4288953, at *3 n.4 (9th Cir. Sept. 10, 2018) (citing *Dynamex*, 416 P.3d at 4-7 & n.5). In that same decision, the Ninth Circuit held that the FAAAA does *not* preempt the other primary test for deciding the independent contractor/employee question in California, which is the test established by *S.G. Borello & Sons Inc. v. Department of Industrial Relations*, 769 P.2d 399 (Cal. 1989). *Cal. Trucking*, 2018 WL 4288953, at *4.

Thus, Defendants' FAAAA challenge can only impact causes of action that rely on the wage orders, which are the first, second, third, seventh and eighth causes of action. But none of those causes of action rely *solely* on the wage orders; every cause of action implicating the wage orders also asserts a claim under a section of the California Labor Code. *See* Second Am. Cmplt. ¶ 54 (first cause of action); *id.* ¶¶ 57-59 (second cause of action); *id.* ¶¶ 62-64 (third cause of action); *id.* ¶ 82 (seventh cause of action); *id.* ¶ 87(c) (eighth cause of action). The statutory portions will be analyzed under the *Borello* standard, so they are not subject to FAAAA preemption. *See Cal. Trucking*, 2018 WL 4288953, at *4.

What's more, *Dynamex* did not eliminate the application of the *Borello* test *even for wage order claims*. *Dynamex* construes only one of three alternative definitions of employment in the wage orders, the "suffer or permit to work" definition. 416 P.3d at 7; *see also Cal. Trucking*, 2018 WL 4288953, at *3 n.4 (noting that *Dynamex* interprets only the "suffer or permit to work" definition). *Dynamex* does not displace the use of the *Borello* test if a plaintiff intends to prove that he is properly classified as an employee under wage order definition of employment as "to engage, thereby creating a common law employment relationship." *See* 416 P.3d at 6; *see also id.* at 26 (noting that the common law employment relationship definition is equivalent to the *Borello* standard).

The upshot is that even if Defendants were right that the FAAAA preempts prong B of the *Dynamex* ABC test, the only effect that would have on this case is that Plaintiffs would have to rely on the *Borello* test for all of their claims, instead of

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   applying the ABC test to the wage order claims and the *Borello* test to the others.

2   *See Cal. Trucking*, 2018 WL 4288953, at *3 n.4.  Even accepting Defendants'

3   FAAAA preemption arguments would avail them nothing that changes the scope of

4   the litigation in terms of proof of violations or the corresponding remedies.

5        **(b)**     **The FAAAA Does Not Preempt the ABC Test**

6        Moving to the merits of Defendants' argument, they assert that the FAAAA

7   preempts "any state law that ha[s] more than a 'remote' or 'tenuous' effect on a

8   'motor carrier's prices, routes, or services."  Mem. 3.  But merely having a "more

9   than remote" effect is not sufficient to effect preemption: because of the

10   "presumption against the pre-emption of state police power regulations," the only

11   state laws that are preempted by the FAAAA are those "with a *significant* impact on

12   carrier rates, routes, or services."  *Dilts v. Penske Logistics, LLC*, 769 F.3d 637, 643,

13   645 (9th Cir. 2014) (quoting *Rowe v. N.H. Motor Transp. Ass'n*, 552 U.S. 364, 375

14   (2008)).

15        Ninth Circuit precedent shows that the ABC test does not have a significant

16   impact on rates, routes or services justifying FAAAA preemption.  Put briefly, the

17   ABC test is not preempted because it is merely a "generally applicable background

18   regulation[ ]" that is "several steps removed from prices, routes, or services."  *Dilts*,

19   769 F.3d at 646.  Even if the ABC test resulted in an increase in XPO's operating

20   costs – a theory not present in the record at this stage – the test would not be

21   preempted because it is a "broad [test] applying to hundreds of different industries

22   with no other forbidden connection with prices[, routes,] and services."  *Id.* at 647

23   (quotation marks omitted) (some alterations in original).  In fact, the Ninth Circuit

24   has held that a predicted 25% increase in operating costs was insufficient to

25   constitute a significant impact on rates, routes or services.  *See Cal. Trucking*, 2018

26   WL 4288953, at *8; *see also Allied Concrete & Supply Co. v. Baker*, __ F.3d __,

27   Nos. 16-56546, 17-55343, 17-55503, 2018 WL 4495955, at *11 (9th Cir. Sept. 20,

28   2018) (holding that preemption did not apply because "[t]he prevailing wage law

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

8

1   [was] not 'related to' . . . prices, routes, and services within the meaning of the

2   [FAAAA's] preemption clause" (quotation marks omitted) (some alterations in

3   original)).

4        Put another way, the ABC test is akin to the countless state labor laws that are

5   not preempted because they "operate one or more steps away from the moment at

6   which the firm offers its customer a service for a particular price." *Costello v.*

7   *BeavEx, Inc.*, 810 F.3d 1045, 1053 (7th Cir. 2016), *cert. denied*, 137 S. Ct. 2289

8   (2017). For that very reason, the Seventh Circuit held that the ABC test, as applied

9   under Illinois law, was not preempted by the FAAAA. *See id.* at 1053, 1055 ("[N]o

10  one thinks that the [Airline Deregulation Act] or the FAAAA preempts these and the

11  many comparable state [labor] laws because their effect on price is too 'remote.'"

12  (some alterations in original)).

13       Defendants do not claim that as an economic matter the ABC test has a

14  significant impact on the prices, routes or services to the customer. Nor could they

15  at the pleading stage, because there is no factual allegation to support that claim.

16  Instead, they rely on dicta in two decisions that purportedly establishes a categorical

17  rule that "state law prohibiting motor carriers' use of independent contracts has an

18  impermissible effect on the prices, routes or services of motor carriers and is

19  preempted." Mem. 3 (quotation marks omitted) (citing *Am. Trucking Ass'ns v. City*

20  *of Los Angeles*, 559 F.3d 1046 (9th Cir. 2009); *People ex rel. Harris v. Pac Anchor*

21  *Transp., Inc.*, 329 P.3d 180 (Cal. 2014)).

22       But neither cited decision compels the conclusion that the ABC test is

23  preempted. In *American Trucking* the Ninth Circuit reviewed Port of Los Angeles

24  "concession agreements" that, among other things, expressly barred the use of

25  independent contractors by port trucking companies. 559 F.3d at 1049-50. The

26  circuit court held that the ban on using independent contractors in port trucking did

27  not fall within the FAAAA's "safety exception" to preemption. *Id.* at 1056.

28       By contrast, the ABC test at issue here does not target trucking – it applies to

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

all employers in all industries governed by the wage orders – and it does not ban the use of independent contractors.  The Supreme Court of California has made clear that the ABC test does not affect how businesses classify their workers or the degree of worker "freedom of action" businesses can permit.  *Dynamex*, 416 P.3d at 38 n.28.  All that it requires is that businesses comply with the worker-protection obligations of the wage orders with respect to those workers who are considered "employees" pursuant to the ABC test.  The ABC test is thus different from the categorial ban on independent contractors effected by the concession agreements in *American Trucking*.

Likewise, *Harris* fails to support Defendants' argument.  In that case, the Supreme Court of California analyzed whether the FAAAA preempted the State's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, where the UCL was applied to trucking companies.  *Harris*, 329 P.3d at 182.  The court noted that California "may not prevent [trucking companies] from using independent contractors," but explained that "[n]othing in the People's UCL action would prevent defendants from using independent contractors."  *Id.* at 189.  Like Plaintiffs' wage order claims here, the People's UCL claim in that case was not preempted because it contended only that "if defendants pay individuals to drive their trucks, they must classify these drivers appropriately and comply with generally applicable labor and employment laws."  *Id.* (emphasis added).  Again, Plaintiffs are not seeking to prevent XPO from using independent contractors; Plaintiffs seek only to ensure that Defendants comply with the wage order obligations with respect to those workers who are found to be "employees" under the ABC test.

Finally, Defendants ask this Court to follow the First Circuit's decision in *Schwann v. FedEx Ground Package System, Inc.*, 813 F.3d 429 (1st Cir. 2016), in which that court held that prong B of the ABC test was preempted by the FAAAA.  *See* Mem. 5; *Schwann*, 813 F.3d at 440.  This Court should decline that request.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

*Schwann* was based on First Circuit precedent that bound that court, but is not binding on this Court. *See* 813 F.3d at 438 (citing *Mass. Delivery Ass'n v. Coakley*, 769 F.3d 11 (1st Cir. 2014)); *id.* at 439-40 (citing *DiFiore v. Am. Airlines, Inc.*, 646 F.3d 81 (1st Cir. 2011)). What *is* controlling precedent here is the rule set out in *Dilts* that a "broad [test] applying to hundreds of different industries with no other forbidden connection with prices[, routes,] and services," like the ABC test, is not preempted. 769 F.3d at 647 (quotation marks omitted) (some alterations in original).

The fact that *Schwann* relies on reasoning that is foreclosed in this Circuit throws the conflict between *Schwann* and *Dilts* into sharp relief. One of the key points of the *Schwann* decision was that FAAAA preemption was necessary to prevent a "patchwork" of state laws that would be the result of some states' applying the ABC test and other states' not applying it. *See* 813 F.3d at 438. But the Ninth Circuit has held that the mere "fact that laws may differ from state to state" does *not* create a "patchwork" problem as long as the different laws aren't "*service-determining* laws, rules, and regulations." *Dilts*, 769 F.3d at 647 (quoting *Rowe*, 552 U.S. at 373). As explained above, the ABC test does not determine the services that XPO may offer customers – its effect is limited to, potentially, marginally increasing operational costs – so in this Circuit it cannot be said to contribute to a patchwork of different state laws for FAAAA preemption purposes. *See id.*

In light of the controlling Ninth Circuit precedent applicable here, Plaintiffs respectfully suggest that this Court should not follow *Schwann*, and should instead find that the ABC test is not preempted by the FAAAA.

### (c)    Even if the FAAAA Preempted Prong B of the ABC Test, That Prong Is Severable

If this Court disagrees and holds that prong B renders the ABC test preempted, it should sever prong B and allow the other two prongs of the ABC test to stand. *See* 813 F.3d at 440-41. California law determines whether a preempted

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

provision is severable from the rest of a law. *See Nat'l Broiler Council v. Voss*, 44 F.3d 740, 748 n.12 (9th Cir. 1994).

Under California law, "[t]he general rules established for partially invalid statutes provide ready guidance when part of an administrative regulation falls." *Schenley Affiliated Brands Corp. v. Kirby*, 98 Cal. Rptr. 609, 626 (Ct. App. 1971). Where the enacting body would have intended the regulation to continue in force without the invalid provision, the regulation should be found to be severable. *See id.*; *see also Santa Barbara Sch. Dist. v. Superior Court*, 530 P.2d 605, 618 (Cal. 1975) (explaining that a provision is severable if the remainder "is complete in itself and would have been adopted by the legislative body had the latter foreseen the partial invalidation of the statute"). On the other hand, severance is improper where "preservation of the valid portion will cause a result not intended by the enacting body." *Id.*[2]

Under that rubric, prong B of the ABC test is severable from the rest of the test. The Supreme Court of California has explained that the wage orders are "primarily for the benefit of the workers themselves," but they also are intended "for the benefit of those law-abiding businesses that comply with the obligations imposed by the wage orders, ensuring that such responsible companies are not hurt by unfair competition from competitor businesses that utilize substandard employment practices." *Dynamex*, 416 P.3d at 32. It follows that, had the IWC foreseen a FAAAA preemption challenge, it would have intended that the wage orders provide the maximum protection for workers allowable under federal

---

[2] In *Aguiar v. Superior Court*, 87 Cal. Rptr. 3d 813 (Ct. App. 2009), the court opined that "it is at best doubtful" that "the severance doctrine is applicable to administrative regulations, as opposed to the legislation those regulations are intended to implement." *Id.* at 824. That statement ignores the clear guidelines established in *Schenley*. And a more recent California court of appeal case once again applied ordinary severance doctrine to an administrative regulation. *See POET, LLC v. State Air Res. Bd.*, 218 Cal. Rptr. 3d 681, 713 (Ct. App. 2017).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   preemption doctrine.  The ABC test without prong B is still more expansive than the

2   *Borello* test that would otherwise apply, so the IWC would have intended that the

3   ABC test without prong B continue in force.  As a result, prong B can be severed

4   under California law.  *See* 813 F.3d at 441.

5         **2.**      **The California Labor Code Does Not Violate the Dormant**

6                   **Commerce Clause**

7       Defendants also argue that Plaintiffs' claims violate the Dormant Commerce

8   Clause.  Mem. 7-8.  That argument is foreclosed by the Ninth Circuit's decision in

9   *Sullivan v. Oracle Corp.*, 662 F.3d 1265 (9th Cir. 2011).  There, plaintiffs asserted

10  unpaid overtime claims under California law against an out-of-state company for

11  work performed in California.  *See id.* at 1267, 1270.  The defendant company

12  contended that applying California law to employees who sometimes work in

13  California and sometimes don't would violate the Dormant Commerce Clause.  *Id.*

14  at 1270.

15      The Ninth Circuit rejected that contention, explaining that "[i]f a statute

16  regulates even-handedly to effectuate a legitimate local public interest, and its

17  effects on interstate commerce are only incidental, it will be upheld unless the

18  burden imposed on such commerce is clearly excessive in relation to the putative

19  local benefits."  *Id.* at 1271 (quotation marks omitted).  The court concluded:

20  "California applies its Labor Code equally to work performed in California, whether

21  that work is performed by California residents or by out-of-state residents.  There is

22  no plausible Dormant Commerce Clause argument when California has chosen to

23  treat out-of-state residents equally with its own."  *Id.*; *see also Alaska Airlines, Inc.*

24  *v. City of Long Beach*, 951 F.2d 977, 981, 984 (9th Cir. 1991) (determining that an

25  ordinance requiring quieter flight equipment did not violate the Dormant Commerce

26  Clause because it had a legitimate purpose and applied equally to interstate and

27  intrastate flights).

28      Nothing is different in this case.  Plaintiffs' claims are based on California

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1 Labor Code provisions that apply equally to California residents and nonresidents,

2 as long as the work is performed within California.  Defendants have no plausible

3 Dormant Commerce Clause argument.

### 3.  The Truth in Leasing Regulations Do Not Preempt Plaintiffs' Fourth Cause of Action

6 Defendants argue that the Truth in Leasing regulations located at 49 C.F.R.

7 § 376.12 preempt count 4 of the second amended complaint.  Mem. 8-11.  They

8 assert that section 2802 of the California Labor Code – the statutory basis for count

9 4 – is preempted because it interferes with "the 'free play' zone created by [the

10 Truth in Leasing] regulations."  *Id.* at 10.  49 C.F.R. § 376.12(e), which is titled

11 "[i]tems specified in lease," provides that "[t]he lease shall clearly specify which

12 party is responsible for" four categories of obligations.  The other cited provisions

13 contain parallel language.  *See* 49 C.F.R. § 376.12(h)-(j).  Section 2802, in turn,

14 requires an employer to reimburse an employee for "necessary expenditures or

15 losses incurred by [him] in direct consequence of the discharge of [his] duties."  Cal.

16 Lab. Code § 2802(a).  Defendants cannot meet their burden of showing that the

17 Truth in Leasing regulations preempt section 2802.

18 As an initial matter, the "free play" preemption line of cases are not

19 applicable here.  As the Supreme Court cases cited by Defendants make clear, free

20 play preemption – also known as *Machinists* preemption – is limited to claims

21 related to "union organization, collective bargaining, and labor disputes."  *Chamber*

22 *of Commerce of U.S. v. Brown*, 554 U.S. 60, 65 (2008) (quoting *Lodge 76, Int'l*

23 *Ass'n of Machinists v. Wisc. Emp't Relations Comm'n*, 427 U.S. 132, 140 n.4

24 (1976)).  It cannot be applied outside that context because *Machinists* preemption is

25 based on the premise that Congress's union-related laws carefully balance

26 "protection, prohibition, and laissez-faire" in union-employer relations.  *Id.*  The

27 National Labor Relations Act, the Labor Management Relations Act and the other

28 federal union-related laws that implicate *Machinists* preemption are not at issue in

14

1    this case.

2        Instead, Defendants appear to be invoking "obstacle preemption."  That type

3    of preemption occurs only where "state law stands as an obstacle to the

4    accomplishment and execution of the full purposes and objectives of Congress."

5    *McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015).  In determining the

6    full purposes and objectives of the law, "we must not be guided by a single sentence

7    or member of a sentence, but look to the provisions of the whole law."  *Chae v. SLM*

8    *Corp.*, 593 F.3d 936, 944 (9th Cir. 2010).[3]

9        Defendants must meet a high bar to show that Plaintiffs' claims are

10   preempted under the doctrine of obstacle preemption.  The analysis "start[s] with the

11   assumption that the historic police powers of the States were not to be superseded"

12   unless "that was the clear and manifest purpose of Congress."  *McClellan v. I-Flow*

13   *Corp.*, 776 F.3d 1035, 1039 (9th Cir. 2015) (quoting *Wyeth*, 555 U.S. at 565).  "The

14   presumption against preemption applies with particular force when Congress has

15   legislated in a field traditionally occupied by the States," like employment law.  *See*

16   *id.* (quotation marks omitted); *see also Fort Halifax Packing Co. v. Coyne*, 482 U.S.

17   1, 21 (1987) ("[T]he establishment of labor standards falls within the traditional

18   police power of the State.").  Obstacle preemption is only appropriate where a

19   defendant can overcome that heavy presumption to show that the challenged law

20   will clearly create an obstacle to accomplishing the regulator's goal.  *See McClellan*,

21   776 F.3d at 1039, 1041.

22       Defendants cannot show that section 2802 clearly creates an obstacle to

23   accomplishing the goals of the Truth in Leasing regulations.  The Tenth Circuit has

24

25   _____

26   [3] Defendants have not raised the other forms of preemption.  They have not argued
     that the Truth in Leasing regulations have an express preemption provision, nor that
27   they "occupy the field," nor that it is impossible to comply with federal and state
     law at the same time.  *See McClellan*, 776 F.3d at 1039 (listing the types of
28   preemption).

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

15

Opp'n to Mtn. Judg. on the Pldgs.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

explained that the Interstate Commerce Commission's ("ICC") objectives in promulgating the Truth in Leasing regulations were: (1) to ensure "a full disclosure" of the important terms of leases signed by trucking companies and owner-operator drivers, (2) "to eliminate or reduce opportunities for skimming and other illegal or inequitable practices by motor carriers," and (3) "to promote the stability and economic welfare of the independent trucker segment of the motor carrier industry." *Fox v. Transam Leasing, Inc.*, 839 F.3d 1209, 1211 (10th Cir. 2016); *see also* Lease and Interchange of Vehicles, 43 Fed. Reg. 29812, 29812 (1978) (same).

Section 2802, by requiring XPO to reimburse its drivers for costs they incurred working for it, does not create an obstacle to those goals. On the contrary, section 2802 furthers goals (2) and (3) by protecting truckers from some of the exploitative leasing practices used by trucking companies. That is not by accident: the purpose of section 2802, like the Truth in Leasing regulations, is to protect workers from the exploitation that can occur as a result of the imbalance in bargaining power as between employees and employers. *See, Janken v. GM Hughes Elecs.*, 53 Cal. Rptr. 2d 741, 753 n.24 (Ct. App. 1996). It is instead *Defendants'* reading of the regulations that would frustrate the regulations' purpose, by undermining states' ability to reduce inequitable employer practices and by barring states' efforts to promote truckers' economic stability. *See Fox*, 839 F.3d at 1211.

It is true that three decisions have found that the Truth in Leasing regulations preempt laws related to the distribution of costs as between drivers and trucking companies. *See Valadez v. CSX Intermodal Terminals, Inc.*, No. 15-cv-05433, 2017 WL 1416883 (N.D. Cal. Apr. 10, 2017); *Remington v. J.B. Hunt Transp., Inc.*, Nos. 15-10010, 15-13019, 2016 WL 4975194 (D. Mass. Sept. 16, 2016); *Rodriguez v. RWA Trucking Co.*, 190 Cal. Rptr. 3d 663 (Ct. App. 2013). But those courts erred by focusing their analysis on what appeared to be "permitted" by individual provisions of the regulations, *see Valadez*, 2017 WL 1416883, at *9; *Remington*, 2016 WL 4975194, at *4; *Rodriguez*, 190 Cal. Rptr. 3d at 677-78, instead of pulling

1    back to determine the regulations' "full purposes and objectives" based on the

2    "whole law," *see McClellan*, 776 F.3d at 1039; *Chae*, 593 F.3d at 944.

3         The cited opinions' tight focus significantly widened the scope of obstacle

4    preemption.  Instead of preempting only laws that create clear obstacles to a federal

5    law's purpose, obstacle preemption would now effect preemption any time any

6    provision of any federal law appeared to permit something.  On this view,

7    preemption occurs even where the regulator had no intention of preempting state

8    laws, but it simply drafted an ambiguous regulation.  Indeed, under this theory

9    preemption would occur even where the purpose of the law was to grant states

10   flexibility – a federal law *permitting* states to legalize gambling could be read to

11   *require* them to legalize it under the *Remington* court's standard that "[w]hat is

12   explicitly permitted by federal regulations cannot be forbidden by state law."  2016

13   WL 4975194, at *4.  Those results are contrary to the principles of federalism that

14   undergird preemption doctrine and provide that "the historic police powers of the

15   States [are] not to be superseded by [a] Federal Act unless that was the clear and

16   manifest purpose of Congress."  *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 485 (1996).

17        Even if Defendants' and the cited opinions' focus on individual provisions

18   were appropriate, their conclusion would still be erroneous under the rules for

19   preemption set out by the U.S. Supreme Court and the Ninth Circuit.  The applicable

20   Truth in Leasing regulations provide that "[t]he lease shall clearly specify which

21   party is responsible for" various obligations.  49 C.F.R. § 376.12(e), (h)-(j).  That is

22   a *procedural* disclosure obligation, not a *substantive* mandate as to who must pay

23   what. *See Fox*, 839 F.3d at 1216-17 & n.6.  This Court put it well when it

24   construed: "The aim of the regulations is to compel disclosure of the contract terms

25   between the owner-operators and the carriers, not to govern the terms for which the

26   parties are permitted to bargain." *Renteria v. K&R Transp., Inc.*, No. 98 CV 290,

27   1999 WL 33268638, at *3 (C.D. Cal. Feb. 23, 1999).

28        Defendants' confusion of a procedural *disclosure* obligation with a

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

17

substantive mandate imposing a palpable duty is equivalent to arguing that a federal law that requires disclosure of loan interest rates preempts state anti-usury laws.  In both cases, the federal law providing that a contract term must be disclosed does not impose any substantive limits on the substance of that contract term.[4]  Or, again in this Court's words "[n]othing in the federal [Truth in Leasing] regulations prevents a state from passing legislation that mandates a particular contract term with regard to the costs of insurance."  *Renteria*, 1999 WL 33268638, at *3.

The cited regulations plainly impose only procedural disclosure obligations.  But even if there were ambiguity about whether the regulations are procedural or substantive, the presumption against preemption requires that the ambiguity be resolved in favor of section 2802's validity.  *See Medtronic*, 518 U.S. at 485 (holding that preemption occurs only where that is the "clear and manifest purpose of Congress"); *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65 (1989) ("Congress should make its intention 'clear and manifest' if it intends to pre-empt the historic powers of the States.").

Here, Defendants attempt to apply the Truth in Leasing regulations in a way that contradicts and subverts the regulations' purpose.  Such an attempt cannot overcome the presumption against preemption or a fair reading of the regulations.  Defendants' Truth in Leasing preemption argument should be rejected.

**B.**   **Defendants' *Estrada* Contention is Premature**

Defendants contend that Plaintiffs may not seek reimbursement of their lease payments under section 2802 in accordance with *Estrada v. FedEx Ground Package*

---

[4] There is a small number of substantive provisions in the Truth in Leasing regulations.  *See Fox*, 839 F.3d at 1216-17.  Those provisions are unambiguous about their substantive impact.  *See, e.g.*, 49 C.F.R. § 376.12(i) ("The lease shall specify that the lessor *is not required to* purchase or rent any products, equipment, or services from the authorized carrier as a condition of entering into the lease arrangement." (emphasis added)).  The substantive part of § 376.12(i) is not at issue in this case, nor is any other substantive Truth in Leasing provision.

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1   *System, Inc.*, 64 Cal. Rptr. 3d 327 (Ct. App. 2007).  Mem. 12.  That contention is not

2   ripe for decision at this stage.

3          First of all, Plaintiffs do not concede the premise on which Defendants'

4   argument is based – that they genuinely own their trucks, and hence are simply

5   providing them to XPO as XPO may require of employees.  The trucks are entirely

6   at the disposal of XPO and are not permitted to be used for any purpose other than

7   that demanded by XPO; in at least some cases they are leased by XPO to the drivers.

8   *See* SAC ¶ 22.  In any event, without a developed factual record through discovery,

9   it is premature at this pleading stage, prior to the determination of employee

10  misclassification, to reach the issue of what costs are reimbursable.  *See, e.g.*, *Smith*

11  *v. Cardinal Logistics Mgmt. Corp.*, No. 07-2104, 2009 WL 2588879, at *5 (N.D.

12  Cal. Aug. 19, 2009) (declining to decide this issue on summary judgment because

13  "prior to a determination that [defendant's] drivers are employees, the Court is not

14  willing to engage in hypothetical speculation about whether the lease payments in

15  this case are or are not reimbursable" and [t]he better course is to proceed to trial,

16  where a fuller record will afford a more substantial basis for decision"); *see also*

17  *Yanez*, 63 F.3d at 872 (noting that judgment on the pleadings is inappropriate where

18  a material issue of fact remains to be resolved).

19         Regardless of the outcome of the specific and precise issue of *lease payments*

20  as applied under *Estrada* and its progeny, all other operational expenses associated

21  with truck driving – fuel, insurance, repair and maintenance, tires, administrative

22  fees, fees for the use of required computer equipment, workers compensation and

23  others, *see* SAC ¶¶ 20, 66, 67 – remain reimbursable under section 2802.

24  **C.    Defendants Have Not Shown That a Stay Is Justified Here**

25         After they agreed to a full set of pretrial dates without mentioning their intent

26  to seek a stay, Defendants now ask this Court to exercise its discretion to suspend

27  this litigation under *Landis v. North American Co.*, 299 U.S. 248 (1936), on the

28  ostensible grounds that doing so would "preserve judicial resources" and "promote

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

1    the orderly course of justice."  Mem. 15.  To the contrary, their mischievous motion

2    asks this Court to delay this case – in which Plaintiffs on behalf of themselves and

3    similarly situated drivers are seeking substantial recompense for unpaid work –

4    based solely on the ground that they should be spared litigation costs and effort.

5    This Court should deny Defendants' motion because granting a stay would cause

6    significant prejudice to Plaintiffs' ability to redress their rights in court, and

7    allowing the litigation to proceed will not cause Defendants any hardship or

8    inequity; simply having to litigate this matter, as they will in any event, does not

9    qualify as the kind of prejudice warranting a stay.

10        Section 1 of the Federal Arbitration Act (the "Arbitration Act") exempts

11   "contracts of employment" of transportation workers from the provisions of the

12   Arbitration Act.  *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 109 (2001)

13   (quoting 9 U.S.C. § 1).  Defendants argue that Plaintiffs and the Court should wait

14   for the U.S. Supreme Court's decision in *New Prime Inc. v. Oliveira*, 138 S. Ct.

15   1164 (2018) (granting certiorari), because, according to them, the Supreme Court

16   will decide "whether independent contractor agreements are 'contracts of

17   employment'" for the purposes of the section 1 exemption.  Mem. 13.  In the

18   decision being reviewed in *Oliveira*, the First Circuit held that, based on the

19   understanding of the pertinent statutory language when enacted in 1925, *any*

20   contract by an individual to perform work in the transportation field, regardless of

21   employment status created by that contract, qualified for the section 1 exemption.

22   857 F.3d 7, 9 (1st Cir. 2017), *cert. granted*, 138 S. Ct. 1164 (2018).

23        Defendants have neglected to explain that even if independent contractor

24   agreements are not covered by the section 1 exemption, if Plaintiffs are employees

25   as they allege, they are transportation workers protected by that exemption from

26   compelled arbitration.  *Circuit City*, 532 U.S. at 119.  The issue of employment

27   status – that is, whether the plaintiff workers are in fact employees or independent

28   contractors – may prove ancillary in the *Oliveira* case on Supreme Court review, but

1   it is the gravamen of this case, and must be litigated in any event.  Put another way,

2   the question of whether *Oliveira* would even apply to this case is bound up with this

3   case's merits, and it makes no sense to slow down the merits determination due to a

4   Supreme Court case that may ultimately have no impact here.  And the Supreme

5   Court may well have decided *Oliveira* by the time we reach the employment-status

6   merits in this case.

7        In deciding whether to exercise its inherent authority to grant a motion to stay

8   proceedings, a court must weigh competing interests, including "[1] the possible

9   damage which may result from the granting of a stay, [2] the hardship or inequity

10  which a party may suffer in being required to go forward, and [3] the orderly course

11  of justice measured in terms of the simplifying or complicating of issues, proof, and

12  questions of law which could be expected to result from a stay." *CMAX, Inc. v.*

13  *Hall*, 300 F.2d 265, 268 (9th Cir. 1962).  The proponent of a stay bears the burden

14  of establishing its need. *Clinton v. Jones*, 520 U.S. 681, 708 (1997).  If there is

15  "even a fair possibility" that granting a stay would cause prejudice to a party, the

16  stay should not be granted unless the moving party can establish a "clear case of

17  hardship or inequity." *Dependable Highway Express, Inc. v. Navigators Ins. Co.*,

18  498 F.3d 1059, 1066 (9th Cir. 2007).  Moreover, "[i]f a stay is especially long or its

19  term is indefinite, [courts] require a greater showing to justify it." *Yong v. INS*, 208

20  F.3d 1116, 1119 (9th Cir. 2000).

21        Defendants' request for a stay should be denied under the *CMAX* factors. A

22  stay would prejudice Plaintiffs because they have a strong interest in moving to trial

23  and delaying the trial can "increase the danger of prejudice resulting from the loss of

24  evidence, including the inability of witnesses to recall specific facts, or the possible

25  death of a party." *Clinton*, 520 U.S. at 707-08.  Furthermore, Plaintiffs have alleged

26  ongoing harm and are seeking injunctive relief, increasing the prejudice they would

27  suffer if the stay were granted.  SAC ¶ 2; *see Lockyer v. Mirant Corp.*, 398 F.3d

28  1098, 1112 (9th Cir. 2005).  And Plaintiffs would be especially prejudiced because

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

they are asking for wages that were denied to them.  As California law recognizes, "[d]elay of payment or loss of wages results in deprivation of the necessities of life, suffering inability to meet just obligations to others, and, in many cases may make the wage-earner a charge upon the public."  *Smith v. Superior Court*, 137 P.3d 218, 220-21 (Cal. 2006).

By contrast, Defendants cannot identify any particular hardship or inequity that they will suffer if the stay is denied.  A defendant's merely having to defend a suit, without more, does not constitute the "clear case of hardship or inequity" that is required under *Landis*.  *Lockyer*, 398 F.3d at 1112.  Accordingly, because they cannot establish a "clear case of hardship or inequity," their motion should be denied, even if they could show that a stay might "promote the orderly course of justice."  *Dependable Highway Express*, 498 F.3d at 1066.

Finally, as explained above, waiting for the *Oliveira* decision will not enhance judicial efficiency.  A *Landis* stay is only appropriate in cases where the resolution of related litigation would be likely to significantly simplify the factual and legal issues at stake in the instant litigation.  *CMAX*, 300 F.2d at 268.  Here, even if independent contractors do not qualify for the section 1 exemption, this Court will still have to make the threshold determination of whether Plaintiffs are employees or independent contractors.  What's more, Plaintiffs claims under the California Private Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code §§ 2698-2699.5, are not subject to arbitration, and will have to proceed no matter what the Supreme Court decides in *Oliveira*.  *See Sakkab v. Luxottica Retail N. A.m, Inc.*, 803 F.3d 425, 431 (9th Cir. 2015) (holding that the Arbitration Act does not preempt California's rules protecting PAGA claims); *Williams v. Superior Court*, 188 Cal. Rptr. 3d 83, 88 (Ct. App. 2015) (holding that a PAGA plaintiff "cannot be compelled to submit any portion of his representative PAGA claim to arbitration").  A stay would materially slow the determination of Plaintiffs' PAGA claims without any benefit to judicial efficiency.

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

Opp'n to Mtn. Judg. on the Pldgs.

1    In sum, granting a stay here would prejudice Plaintiffs without enhancing

2  judicial efficiency, and denying a stay would not prejudice Defendants.

3  **IV.    <u>CONCLUSION</u>**

4    The Defendants have not shown that they are clearly entitled to judgment on

5  the pleadings.  Their preemption arguments do not overcome the presumption

6  against preemption, and their contention based on the California court of appeal

7  decision in *Estrada v. FedEx Ground Package System, Inc.*, 64 Cal. Rptr. 3d 327

8  (Ct. App. 2007), is premature.  Nor is their request for a stay any better: it would

9  park this case on the Court's docket without any attendant benefit to the parties or

10  the Court.  For the reasons stated above, this Court should deny in full Defendants'

11  motion for judgment on the pleadings.

12

13  DATED:  September 24, 2018          JULIE GUTMAN DICKINSON
                                        IRA L. GOTTLIEB
14                                      KATHERINE M. TRAVERSO
                                        KIEL B. IRELAND
15                                      BUSH GOTTLIEB, A Law Corporation

16

17

18                                      By:  _____/s/ Kiel B. Ireland_____

19                                           KIEL B. IRELAND
                                        Attorneys for Plaintiffs
20

21

22

23

24

25

26

27

28

BUSH GOTTLIEB
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260

# PROOF OF SERVICE

**Angel Omar Alvarez, et al., v. XPO Logistics Cartage, et al**
**2:18-cv-3736-SJO-E**

**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

At the time of service, I was over 18 years of age and **not a party to this action**.  I am employed in the County of Los Angeles, State of California.  My business address is 801 North Brand Boulevard, Suite 950, Glendale, CA 91203-1260.

On September 24, 2018, I served true copies of the following document(s) described as **Plaintiffs' Opposition to Defendants' Motion for Judgment on the Pleadings** on the interested parties in this action as follows:

Mary C. Dollarhide
DLA PIPPER LLP US
4365 Executive Drive, Suite 1100
San Diego, CA 92121-2133
Tel: 858-677-1400
Fax: 858-677-1401
mary.dollarhide@dlapiper.com

Kevin D. Harlow
Kathryn Riley Grasso
DLA PIPER LLP US
401 B. Street, Suite 1977
San Diego, CA 92101-4297
Tel: 619-699-2700
Fax: 619-6992701
kathryn.riley@dlapiper.com
kevin.harlow@dlapiper.com

**BY CM/ECF NOTICE OF ELECTRONIC FILING:**  I electronically filed the document(s) with the Clerk of the Court by using the CM/ECF system. Participants in the case who are registered CM/ECF users will be served by the CM/ECF system.  Participants in the case who are not registered CM/ECF users will be served by mail or by other means permitted by the court rules.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct and that I am employed in the office of a member of the bar of this Court at whose direction the service was made.

Executed on September 24, 2018, at Glendale, California.

/s/ Kiel B. Ireland
Kiel B. Ireland

Bush Gottlieb
801 North Brand Boulevard, Suite 950
Glendale, California 91203-1260