**LAW OFFICES OF C. JOE SAYAS, JR.**
C. JOE SAYAS, JR. (Bar No. 122397)
KARL P. EVANGELISTA (Bar No. 250685)
500 N. Brand Boulevard, Suite 980
Glendale, California  91203
Telephone: (818) 291-0088
Facsimile: (818) 240-9955

**BUSH GOTTLIEB, ALC**
IRA L. GOTTLIEB (Bar No. 103236)
JULIE GUTMAN DICKINSON (Bar No. 148267)
HECTOR DE HARO (Bar No. 300048)
ESTEPHANIE VILLALPANDO (Bar No. 323087)
801 N. Brand Boulevard, Suite 950
Glendale, California  91203
Telephone: (818) 973-3200
Facsimile: (818) 973-3201

Attorneys for Plaintiffs Angel Omar Alvarez,
Alberto Rivera, Fernando Ramirez,
Juan Romero and Jose Paz

(*Additional Counsel on following page*)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| ANGEL OMAR ALVAREZ, an individual; ALBERTO RIVERA, an individual; FERNANDO RAMIREZ, an individual; JUAN ROMERO, an individual; and JOSE PAZ, an individual; on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>XPO LOGISTICS CARTAGE, LLC dba XPO LOGISTICS, a Delaware Limited Liability Company; XPO CARTAGE, INC. dba XPO LOGISTICS, a Delaware corporation; XPO LOGISTICS, INC. dba XPO LOGISTICS, a Delaware corporation; XPO LOGISTICS, LLC dba XPO LOGISTICS, a Delaware limited liability company; XPO INTERMODAL SOLUTIONS, INC. dba XPO LOGISTICS, an Ohio corporation; XPO INTERMODAL SERVICES, LLC dba XPO LOGISTICS,  a Delaware limited liability company;  JEFFREY TRAUNER, an | Case No.: 2:18-cv-03736-RGK-E<br>Hon. R. Gary Klausner<br><br>Related with Case No.<br>2:18-CV-08220-RGK-E<br><br>CLASS ACTION<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE**<br><br>Date:   September 20, 2021<br>Time:   9:00 a.m.<br>Location:  Courtroom 850 |

a

individual; and DOES 1 through 10, inclusive,

Defendants.

AND CONSOLIDATED ACTIONS

b

*Continued from first page*

DANIEL OSBORN (SBN 132472)
**OSBORN LAW P.C.**
43 West 43rd Street, Suite 131
New York, NY  10036-7424
Telephone: (212) 725-9800
Facsimile: (212) 500-5115

Attorneys for Plaintiffs Jairo Moreno Martinez,
Jesus Carreon and Rodolpho Moreno

SOLOMON E. GRESEN (SBN 164783)
JACK RISEMBERG (SBN 291788)
**RG LAWYERS, LLP**
15910 Ventura Boulevard, Suite 1610
Encino, California  91436
Telephone: (818) 815-2727
Facsimile: (818) 815-2737

Attorneys for Plaintiff Edgar Mendoza

c

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
AND APPROVAL OF FORM AND MANNER OF NOTICE

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ................................................................. 1

II.  FACTUAL AND PROCEDURAL BACKGROUND ............... 2

    A.   The Certified Class ....................................................... 3

    B.   The Parties Diligently Prepared for Trial, but the Court-ordered Mediation Resulted in Settlement on the Eve of Trial ........ 4

    C.   Plaintiffs' Extensive Investigation and Discovery ........... 5

III. SUMMARY OF SETTLEMENT TERMS ............................... 7

    A.   Monetary Terms of Settlement ...................................... 7

    B.   Allocation of Non-Reversionary Settlement Fund ........... 7

    C.   Settlement Administration Costs, Attorneys' Fees, and Litigation Costs ......................................................... 8

    D.   Service Awards for Plaintiffs and Active Class Members ... 9

    E.   Limited Scope of Release as to Class Members' Claims ... 9

IV.  STANDARD OF REVIEW OF PROPOSED CLASS SETTLEMENT ... 10

V.   THE PROPOSED CLASS SETTLEMENT MERITS PRELIMINARY APPROVAL ........................................... 11

    A.   The Mediated Class Settlement is the Product of Non-Collusive, Arms-Length, and Informed Negotiations ........................ 11

    B.   The Proposed Settlement Has No Obvious Deficiencies ... 12

    C.   The Proposed Settlement Does Not Provide Improper Preferential Treatment ................................................. 14

d

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

## TABLE OF CONTENTS (CONT'D)

|  |  | Page |
|---|---|---|
| D. | The Proposed Settlement Falls Within the Range of Possible Approval | 15 |
|  | 1. Strength of Plaintiffs' Case and Amount Offered in Settlement | 16 |
|  | 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation | 16 |
|  | 3. Risk of Maintaining Class Action Status Throughout Trial | 17 |
|  | 4. Extent of Work Completed, and Proximity to Trial | 18 |
|  | 5. Experience and Views of Counsel | 18 |
| E. | The Proposed PAGA Settlement is Reasonable and Within the Range of Possible Approval | 18 |
| VI. | THE PROPOSED CLASS NOTICE IS APPROPRIATE, AND A FAIRNESS HEARING SHOULD BE SCHEDULED | 19 |
| A. | The Proposed Class Notice Contains All of the Required Components | 19 |
| B. | The Method of Notice is Appropriate | 19 |
| C. | The Anticipated Costs of Administration are Reasonable | 20 |
| VII. | CONCLUSION | 20 |

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

# TABLE OF AUTHORITIES

**Page(s)**

## FEDERAL CASES

*Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008)                                                11

*Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL 587844
    (S.D. Cal. Mar. 6, 2009)                                                                15

*Boeing Co. v. Van Gernert*, 444 U.S. 472 (1980)                                                        13n.4

*Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804
    (C.D. Cal. Nov. 18, 2014)                                                             14

*Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-00025-VAP (OPx) and
    EDCV 09-0216-VAP (OPx), 2010 WL 144067 (C.D. Cal. Jan. 7, 2010)        12

*Churchill Village v. Gen. Elec.*, 361 F.3d 566 (9th Cir. 2004)                                         16, 19

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992)                                     10

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011)                              13

*Eddings v. Health Net, Inc.*, No. CV-10-1744-JST, 2013 WL 169895
    (C.D. Cal. Jan. 16, 2013)                                                             11

*Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM (SHx),
    2008 WL 8150856 (C.D. Cal. July 21, 2008)                                            14

*Franklin v. Kaypro Corp.*, 884 F.2d 1222 (9th Cir. 1989)                                               10

*Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862
    (N.D. Cal. Jan. 26, 2007)                                                             12, 15, 16

*Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602
    (N.D. Cal. Apr. 26, 2013)                                                             12, 16

f

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

*Harris v. Amgen, Inc.*, No. CV 07-5442 PSG (PLAx), 2017 WL 6048215
  (C.D. Cal. Apr. 4, 2017) .......................................................................... 17

*Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 1627973
  (N.D. Cal. 2011) .......................................................................... 15, 16

*Hesse v. Spring Corp.*, 598 F.3d 581 (9th Cir. 2010) .......................................... 9-10, 12

*In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322 (5th Cir. 1981) ............ 10

*In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454 (9th Cir. 2000) ......................... 12, 16

*Lake v. First Nationwide Bank*, 156 F.R.D. 615 (E.D. Pa. 1994) .......................... 19

*Landy v. Pettigrew Crewing, Inc.*, No. 2:19-CV-07474-RGK-AFM,
  2020 WL 8614204 (C.D. Cal. Mar. 16, 2020) .............................. 10, 12-13, 14, 19

*Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375 (1970) ........................................ 13n.4

*Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324 (N.D. Cal. 2014) ............................. 14, 15

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982) ............. 10

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948 (9th Cir. 2009) ..................... 11

*Staton v. Boeing Co.*, 327 F.3d 938 (9th Cir. 2003) ...................................... 13, 15

*Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092-BRO (PLAx),
  2015 WL 12658458 (C.D. Cal. May 14, 2015) .............................................. 14

*Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114 (E.D. Cal. 2009) ........ 15

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................ 13

*White v. NFL*, 822 F. Supp. 1389 (D. Minn. 1993) ....................................... 19

g

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
AND APPROVAL OF FORM AND MANNER OF NOTICE

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**CALIFORNIA CASES**

*Nordstrom Commission Cases*, 186 Cal.App.4th 576 (Cal. Ct. App. 2010)          18-19

**FEDERAL STATUTES**

28 U.S.C. § 1332                                                                 2

*Fed. R. Civ. Proc. Rule 23*                                                    2, 10, 19

*Fed. R. Civ. Proc. Rule 30*                                                    5

**CALIFORNIA STATUTES**

*Cal. Bus. & Prof. Code § 17200*                                                3

*Cal. Lab. Code § 201*                                                          3

*Cal. Lab. Code § 202*                                                          3

*Cal. Lab. Code § 203*                                                          3

*Cal. Lab. Code § 226*                                                          3

*Cal. Lab. Code § 1194*                                                         3

*Cal. Lab. Code § 1197*                                                         3

*Cal. Lab. Code § 2802*                                                         3

*Cal. Lab. Code § 2698*                                                         3

*Cal. Lab. Code § 2699*                                                         18

h

## TABLE OF AUTHORITIES (CONT'D)

**Page(s)**

**MISCELLANEOUS**

*Manual for Complex Litigation*, § 21.632 (4th ed. 2004) ............ 10, 11

Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u>,
   § 12.15 (4th ed. 2002) ............ 10

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
AND APPROVAL OF FORM AND MANNER OF NOTICE

## I.   INTRODUCTION

Plaintiffs and Class Representatives Angel Omar Alvarez, Alberto Rivera, Fernando Ramirez, Juan Romero, Jose Paz, Jairo Moreno Martinez, Jesus Carreon, Rodolpho Moreno, and Edgar Mendoza (collectively, "Plaintiffs") seek preliminary approval of a proposed settlement in this certified class action against Defendants XPO Logistics Cartage, LLC, XPO Cartage, Inc., XPO Logistics, Inc., XPO Intermodal Solutions, Inc., and XPO Intermodal Services, LLC (collectively, "XPO" or "Defendants").  The terms of the settlement are detailed in the parties' "Class Action Settlement Agreement" (hereafter, the "Settlement"), a copy of which is attached as Exhibit "A" to the "Declaration of C. Joe Sayas, Jr. in Support of Plaintiffs' Motion for Preliminary Approval of Class Settlement" filed concurrently herewith.

Subject to Final Approval by this Court, the parties have agreed to a non-reversionary settlement of Twenty Million Dollars ($20,000,000.00), inclusive of attorneys' fees and litigation costs, settlement administration costs, Service Awards to Plaintiffs and active Class Members, and civil penalties to the California Labor and Workforce Development Agency ("LWDA") under the Labor Code Private Attorney General Act ("PAGA").  After deductions for the above-noted items, the Settlement provides for an estimated average award of $21,967 for each of the 561 Class Members in this wage-and-hour class action, with approximately 62% of the gross settlement fund disbursed directly to the Class Members.

The Settlement is an excellent result that merits preliminary approval.  It is the product of prolonged, arms-length negotiations between the parties, which was facilitated by the assistance of a well-respected mediator, the Honorable Jay C. Gandhi (Ret.), with whom the parties participated in two full days of mediation.  The Settlement is fully informed by years of hard-fought litigation and extensive discovery, including a highly-contested class certification motion ultimately granted by this Court, multiple motions to dismiss, multiple motions for reconsideration, numerous discovery motions, the parties' competing summary-judgment motions pending at the time of settlement, the 25 separate motions *in limine* submitted as part of the parties' pre-trial filings, as well as the parties' active trial preparations, as it was reached only two weeks prior to the scheduled Pretrial Conference in this matter.  As

1

detailed below, the Settlement provides a fair and reasonable compromise of the claims in this action, in light of all the facts revealed by discovery and the inherent risks and uncertainty of further litigation.

In addition, the proposed Settlement Notice complies with all of the requirements of Rule 23, subdivisions (c)(2)(B) and (e)(1), of the Federal Rules of Civil Procedure, provides Class Members with the best notice practicable under the circumstances, and allows for a full and fair opportunity to consider the Settlement.  Accordingly, Plaintiffs respectfully request that this Court grant preliminary approval of the Settlement, approve the proposed Settlement Notice to Class Members, and set a Fairness Hearing to consider final approval of the Settlement.

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This action was originally filed by the *Alvarez* plaintiffs on February 26, 2018 in the Superior Court of California, County of Los Angeles, and was later removed to this Court based on diversity under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).  *See* Declaration of C. Joe Sayas, Jr., Esq. in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, and Approval of Form and Manner of Notice ("Sayas Decl."), at ¶¶ 11 – 12.[1]

The claims in this certified class action center on a class of truck drivers classified by Defendants as independent contractors, pursuant to an Independent Contractor Operating Contract that Class Members sign as a prerequisite to performing work for Defendants.  The Plaintiffs assert that the Class Members are properly deemed employees under California law, and therefore misclassified, and that such misclassification resulted in repeated violations of multiple provisions of the California Labor Code.  The operative Fourth Amended Complaint

---

[1] Two later-filed cases, brought by Plaintiffs Jairo Moreno Martinez, *et al.*, Case No. 2:18-cv-06175-RGK-E, and Plaintiff Edgar Mendoza, Case No. 2:18-cv-09144-RGK-E, were consolidated with this case by Orders dated October 22, 2018 and December 7, 2018, respectively.  By Order dated January 14, 2021, these latter cases were ordered closed.  *See* Sayas Decl., at ¶ 13.

2

states causes of action for: (1) failure to pay minimum-wage compensation under Labor Code sections 1194 and 1197; (2) failure to reimburse expenses under Labor Code section 2802; (3) failure to provide proper wage statements under Labor Code section 226; (4) failure to timely pay earned wages under Labor Code sections 201, 202 and 203; (5) unfair business practices pursuant to California Business and Professions Code sections 17200 *et seq.*; and (6) civil penalties under the Labor Code Private Attorney General Act, Labor Code sections 2698 *et seq. See* Sayas Decl., at ¶ 10.

A.     The Certified Class

On May 20, 2020, Plaintiffs filed a "Renewed Motion for Class Certification" seeking to certify a class of "individuals who: (1) signed an Independent Contractor Operating Contract … with XPO in California that is or was operative at any time from April 30, 2016 through the date of notice to the class; (2) actually drove a truck that he or she owned or leased to perform work for XPO in California at any time from April 30, 2016 through the date of notice to the class; and (3) were classified by XPO as an independent contractor instead of an employee." On September 16, 2020, this Court issued an Order granting certification of the class, except as to claims for reimbursement of truck maintenance expenses. On September 30, 2020, XPO filed a Motion for Reconsideration of the Court's certification order. Plaintiffs opposed XPO's Motion. By Order dated November 16, 2020, the Court denied Defendants' Motion for Reconsideration. *See* Sayas Decl., at ¶¶ 18 – 19.

On December 2, 2020, the Court issued an Order approving the parties' agreed-upon "Notice of Pendency of Class Action" and "Exclusion Form" (collectively, the "Class Notice Packet"), and directed the dissemination of the Class Notice Packet to all Class Members by a Class Administrator, CPT Group. On January 29, 2021 and March 29, 2021, CPT Group sent the Class Notice Packets via United States Mail to 585 Class Members whose names and addresses were obtained from XPO's records. The Class Notice Packet informed Class Members of, *inter alia*, the 45-day deadline to request exclusion from the class. Nine recipients of the Class Notice Packet submitted timely requests to opt out of the class. As of the date

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

of this motion, following separate settlements by certain Class Members, there are 561 remaining Class Members to which the proposed Settlement applies. *See* Sayas Decl., at ¶ 22.

B.  The Parties Diligently Prepared for Trial, but the Court-ordered Mediation Resulted in Settlement on the Eve of Trial

Concurrent with their intensive litigation and trial preparation work, the parties also engaged in good-faith settlement negotiations, including two separate days of private mediation.  As their mediator, the parties selected the Honorable Jay C. Gandhi (Ret.), a former federal magistrate with expertise in wage-and-hour class actions. Decl., at ¶¶ 16 & 28. The parties conducted their first mediation with Judge Gandhi on December 3, 2019, prior to the Court's class certification Order in this case.  Unfortunately, despite the diligent efforts of the parties and Judge Gandhi, no settlement was reached at that time. *See* Sayas Decl., at ¶ 16.

The parties then re-focused their efforts on litigating this case towards certification, and ultimately, trial.  Over the next 21 months of hard-fought litigation: (1) this Court granted class certification in September 2020 and denied reconsideration of the certification order in November 2020, (2) the Ninth Circuit denied Defendants' petition for interlocutory appeal in January 2021, (3) this Court granted Defendants' motion to dismiss the meal and rest break claims on federal preemption grounds in March 2021; (4) this Court granted Plaintiffs' Motion for Reconsideration of the Court's prior Order that California's so-called ABC test is preempted by federal law in June 2021; (5) this Court granted, in part, an anti-SLAPP motion to dismiss XPO's Counterclaims against Plaintiffs Angel Omar Alvarez, Alberto Rivera, Fernando Ramirez, Juan Romero and Jose Paz; and (6) the parties filed and fully briefed competing motions for partial summary judgment, which were under submission with the Court at the time of the proposed Settlement. *See* Sayas Decl., at ¶¶ 18 – 27.

In the midst of active litigation, the parties' counsel agreed to conduct a second mediation with Judge Gandhi on August 9, 2021, pursuant to the Court's order directing the parties to participate in ADR.  In the meantime, the parties completed discovery, including expert discovery, and then made final preparations for the trial then scheduled for September 7, 2021.  The parties evaluated and organized evidence for trial, spent substantial time working

4

to exchange drafts for joint lists of 1,260 exhibits and 50 witnesses, which were filed with the Court, prepared and filed their comprehensive Memoranda of Contentions of Facts and Law, prepared a list of form and special jury instructions, and filed numerous motions *in limine*.  *See* Sayas Decl., at ¶¶ 28 – 29.

On August 9, 2021, counsel for all parties participated in a second, full-day mediation with Judge Gandhi at the JAMS offices.  In the evening of a lengthy mediation, with the valuable assistance of Judge Gandhi, counsel for the parties executed a Memorandum of Understanding ("MOU") outlining the material terms of their agreement.  Counsel for the parties thereafter commenced further discussions regarding production of a long-form settlement agreement.  On August 20, 2021, the parties executed the Settlement being submitted here for the Court's preliminary approval.  *See* Sayas Decl., at ¶¶ 30 – 31.

   C.   Plaintiffs' Extensive Investigation and Discovery

Since the commencement of this action, and throughout the course of 3 and ½ years of hard-fought litigation, the parties to this action have diligently engaged in extensive investigation and discovery.  Both sides served and responded to multiple sets of document production requests, interrogatories, and requests for admissions.  Class Counsel obtained and reviewed production of hundreds of thousands of pages of both hard-copy and electronically-stored documents, including Class Members' pay and work records, with numerous deductions categories and amounts, policy documents, assorted trucking forms, and e-mails exchanged amongst Defendants' management personnel.  *See* Sayas Decl., at ¶ 34.

The parties took and defended 52 total depositions, including 15 depositions under FRCP Rule 30(b)(6) of the entity defendants, 12 depositions of XPO's various management and administrative personnel taken in their individual capacities, 5 experts' depositions, as well as depositions of Plaintiffs and numerous Class Members.  Depositions of XPO's key personnel include those of: (i) Paul Smith, President of XPO's intermodal business unit; (ii) William Maleski, Vice President of Safety for XPO; (iii) Timothy Trempert, Regional Vice President of Operations for XPO's intermodal business unit; (iv) Gary Ahlstrom, Director of Network Pricing for XPO; (v) Tim Williams, Vice President of Operations for XPO; (vi)

5

Enrique Flores, XPO's Regional Safety Manager (vii) Jeffrey Trauner, Terminal Director at XPO's Commerce, California location; (viii) Jeff Freeman, Terminal Director at XPO's San Diego, California location; (ix) Wayne Stevenson, Field Safety Specialist for XPO; (x) Felipe Flores, a long-time dispatcher for XPO; (xi) Lou Guy, Director of Intermodal Systems for XPO; and (xii) Ronna Cunningham, Senior Manager for Accounts Payable at XPO's corporate offices. The numerous depositions taken in the 3 and ½ years leading up to trial here provided invaluable information regarding the wage-and-hour practices at issue in this case, and significantly informed the negotiations leading to settlement on the eve of trial. *See* Sayas Decl., at ¶ 36.

At the outset of the case, Class Counsel—through their investigation and with the assistance of the Plaintiffs and other active Class Members—spoke to additional class members who provided information regarding employment practices. Other Class Members reached out to Class Counsel on their own, to both provide information helpful to the case and obtain answers to their questions regarding same. Class Counsel also obtained a class list from XPO, which Class Counsel used to, *inter alia*, conduct further class-member interviews to obtain valuable information regarding XPO's common workplace practices, policies, and procedures. These interviews yielded information immensely valuable to the prosecution of this class action, as it guided Class Counsel's discovery into such things as the level of control retained by XPO, the supervision exercised over Class Members, and Defendants' scheduling and pay practices. *See* Sayas Decl., at ¶ 33.

To assist with discovery and investigation, Class Counsel also retained invaluable experts on behalf of the Class, including an experienced forensic economics firm, Phillips, Fractor & Company, LLC, and an undisclosed e-discovery consultant firm, to assist Class Counsel in their organization, review, and analysis of voluminous electronic work and pay records generated by XPO's various computer programs. Class Counsel was able to produce a Damages Analysis for presentation at trial, which was ultimately also used in the parties' mediated settlement negotiations on the eve of trial. Other experts retained by Class Counsel also assisted in the preparations for both trial and mediation. They include Jon Haveman,

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

Ph.D., a senior economic analyst who has conducted studies on trucking industry work practices, and the economic relationship involving drivers and companies. Plaintiffs also designated Karl Schulze, CPA, CVA, CFE, CFF, a forensic accountant knowledgeable on corporate *alter ego*, single enterprise, integrated enterprise, and joint liability issues. He analyzed corporate and financial documents relevant to the liability of XPO's parent corporation. An undisclosed trucking expert was also retained to advise Class Counsel of relevant trucking regulations and safety practices. *See* Sayas Decl., at ¶ 37.

## III.  SUMMARY OF SETTLEMENT TERMS

The essential terms of the parties' proposed settlement, as contained in the Class Action Settlement Agreement ("Settlement") submitted with this Motion for Preliminary Approval, are as follows:

### A.  Monetary Terms of Settlement

Under the non-reversionary Settlement, XPO will pay a gross settlement amount of Twenty Million Dollars ($20,000,000.00) to settle the claims of the certified class of 561 Class Members and their related entities (if any) that contracted with XPO. Per the express terms of the Settlement, XPO will transfer this amount to a Class Settlement Fund overseen by a Court-appointed Settlement Administrator within 70 days of a Court Order granting preliminary approval of the Settlement. Every Class Member who returns a W-9 form will receive an individual share, computed by an allocation formula set out in the Settlement. *See* Settlement, attached as Exhibit 1 to Sayas Decl., § III. A.

### B.  Allocation of Non-Reversionary Settlement Fund

The Settlement provides that each participating Class Member shall receive an Individual Settlement Payment, which is a *pro rata* portion of the Net Settlement Amount[2]

---

[2] As discussed below, pursuant to the Settlement, and pending Court approval, the Net Settlement Amount will be determined by deducting the following amounts from the Class Settlement Fund of $20,000,000: (i) payment of $112,500 to the California Labor and Workforce Development Agency to satisfy claims of civil penalties under PAGA (comprising 75% of the $150,000 in settlement of PAGA under the Settlement, with the remaining 25% to be paid directly to Class Members per the terms of the PAGA statute); (ii) Service Awards

based on each Class Member's work weeks, according to the formula set out in the Settlement. Each Class Member's Individual Settlement Payment shall be calculated as follows:

(a)     The Settlement Administrator shall calculate the total aggregate number of Workweeks[3] that all Class Members worked during the relevant class period ("Total Workweeks");

(b)     The Net Settlement Amount shall be divided by the Total Workweeks, resulting in the "Workweek Point Value";

(c)     The total number of Workweeks for each Class Member during the relevant class period will be calculated, based on the information contained in Defendants' records, but Class Members shall be afforded a reasonable opportunity to challenge said information by presenting evidence of weeks worked during the class period; and

(d)     An Individual Settlement Payment amount for each Class Member shall be calculated by multiplying the Class Member's individual number of Workweeks by the Workweek Point Value.

*See* Settlement, § III. B. 2.

C.     Settlement Administration Costs, Attorneys' Fees, and Litigation Costs

Defendants have agreed not to oppose Class Counsel's request for an award of attorneys' fees in an amount not to exceed one-third of the Class Settlement Fund, plus reasonable litigation costs not to exceed $600,000.  Defendants have also agreed to payment of settlement administration costs in an amount not to exceed $50,000.  Class Counsel shall file a separate motion and accompanying memorandum in support of their fees and expenses prior to the Final Approval hearing in this case.  *See* Settlement, § VII. A.

---

to the 9 Plaintiffs in the aggregate amount of $190,000; (iii) Service Awards to 10 active class members in the aggregate amount of $20,000; (iv) Class Counsel's attorneys fees not to exceed 1/3 of the Class Settlement Fund (i.e., $6,666,666.00); (v) Class Counsel's litigation costs not to exceed $600,000; and (vi) settlement administration costs not to exceed $50,000.  *See* Settlement, § III. A.

[3] The Settlement defines a qualifying Workweek as one in which a Class Member worked at least 3 days per weekly settlement or pay period.  *See* Settlement, § I. Y.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

D.   Service Awards for Plaintiffs and Active Class Members

Class Counsel will likewise separately move the Court for Service Awards to Plaintiffs in the following amounts: (i) Angel Omar Alvarez, $30,000; (ii) Alberto Rivera, $30,000; (iii) Fernando Ramirez, $30,000; (iv) Juan Romero, $30,000; (v) Jose Paz, $30,000; (vi) Jairo Moreno Martinez, $10,000; (vii) Jesus Carreon, $10,000; (viii) Rodolpho Moreno, $10,000; and (ix) Edgar Mendoza, $10,000.  *See* Settlement, § VII. B.  Said Service Awards are meant to compensate the Plaintiffs for their services and significant risks incurred in connection with being class representatives.  In the case of Plaintiffs Alvarez, Rivera, Ramirez, Romero and Paz, such compensation includes the heightened risks of having to vigorously defend themselves against XPO's Counterclaims, which sought recovery of millions of dollars in fees and costs against them for having filed this action and serving as class representatives.  *See* Dkt. No. 118.  The request shall also ask that each of the following active class members be awarded Service Awards in the amount of $2,000 to compensate them for the extraordinary time, effort and risks they incurred in actively assisting in the prosecution of this class action, including providing evidence and deposition testimony: (i) Ruben Aldrete; (ii) Ricardo Mendoza; (iii) Juan Vazquez; (iv) Napoleon Gaitan; (v) Jose Lomeli; (vi) Adolfo Avalos; (vii) Jose Luis Ugalde; (viii) Manuel Aguilar; (ix) Jorge Serrano; and (x) Jack Valdivia.  *See* Settlement, § VII. B.  The motion for Service Awards shall be set for hearing concurrently with the Fairness Hearing to be set by the Court in this case.  Per the terms of the Settlement, Defendants have agreed not to oppose the request for Service Awards.  *See id.*

E.   Limited Scope of Release as to Class Members' Claims

The release of Class Members' claims is limited in scope to those which "arise under any statutory or common law claim which was asserted in either the Operative Complaint, or in any of the prior complaints in the Lawsuit or, whether or not asserted, could have been brought arising out of or based on the allegations of misclassification of Plaintiffs and Class Members as independent contractors set forth in the Operative Complaint."  *See* Settlement, § VIII.  This is consistent with case law applicable in the Ninth Circuit.  *See Hesse v. Spring Corp.*, 598 F.3d 581, 590 (9th Cir. 2010) (release of class claims in settlement must be "based

9

on the identical factual predicate as that underlying the claims in the settled class action"); *Landy v. Pettigrew Crewing, Inc.*, No. 2:19-CV-07474-RGK-AFM, 2020 WL 8614204, at *9 (C.D. Cal. Mar. 16, 2020) ("A proposed settlement agreement is overly broad when it fails to limit the claims released to those based on the facts alleged in the complaint."); *see also* Alba Conte & Herbert Newberg, <u>Newberg on Class Actions</u>, § 12.15 (4th ed. 2002), at 312 ("The scope of judgment must be limited to the claims that were asserted or that may arise out of the transaction or events pleaded in the complaint …").

## IV.   STANDARD OF REVIEW OF PROPOSED CLASS SETTLEMENT

Federal law strongly favors and encourages settlements, especially in class actions. *See Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[I]t hardly seems necessary to point out that there is an overriding public interest in settling and quieting litigation. This is particularly true in class action suits.") (citations omitted); *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982) ("[V]oluntary conciliation and settlement are the preferred means of dispute resolution. This is especially true in complex class action litigation …"). The resolution of complex cases by settlement contributes greatly to the efficient utilization of scarce judicial resources, and promotes the swift implementation of justice, for a "just result is often no more than an arbitrary point between competing notions of reasonableness." *See In re Corrugated Container Antitrust Litig.*, 659 F.2d 1322, 1325 (5th Cir. 1981).

Under FRCP Rule 23(e), preliminary approval is the first of a two-stage process whereby the court considers whether a proposed class settlement should be approved as fair, reasonable and adequate. *See Manual for Complex Litigation*, § 21.632 (4th ed. 2004). The second and final step is a final approval hearing, at which time arguments concerning the fairness, adequacy and reasonableness of the settlement may be presented, and the Court may consider the class-member reaction to the proposed settlement following notice. *See, e.g., Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992) (detailing factors to be considered in determining whether a settlement is fair, reasonable and adequate).

Preliminary approval, in contrast, does not require that the Court ultimately determine the question of whether a tentative settlement should be approved as fair, reasonable and

adequate.  Rather, at this first stage of the approval process, the Court simply determines whether the proposed settlement is within the range of possible approval, and thus warrants that notice be sent to class members so that they may fully and fairly consider the proposed settlement.  *See Manual for Complex Litigation*, § 21.632; *see also Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) ("a full fairness analysis is unnecessary" at preliminary approval stage, as court simply needs to "conduct a cursory review of the terms of the parties' settlement for the purpose of resolving any glaring deficiencies before ordering the parties to send the proposal to class members").

## V.    THE PROPOSED CLASS SETTLEMENT MERITS PRELIMINARY APPROVAL

"[P]reliminary approval and notice of the settlement terms to the proposed class are appropriate where '[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval.'"  *Eddings v. Health Net, Inc.*, No. CV-10-1744-JST, 2013 WL 169895, at *2 (C.D. Cal. Jan. 16, 2013).  The Court is also to ensure that the settlement notice "contains adequate information, presented in a neutral manner, to apprise class members of the essential terms and conditions of the settlement."  *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).  As discussed below, the Settlement here meets all of the above requirements for preliminary approval.

> A.    <u>The Mediated Class Settlement is the Product of Non-Collusive, Arms-Length, and Informed Negotiations</u>

As described above, the settlement reached in this case was the result of extensive, arms-length settlement negotiations against the backdrop of completed discovery and contentious litigation through the eve of trial.  These negotiations included an intensive mediation process with an experienced wage-and-hour mediator and former jurist, the Honorable Jay C. Gandhi (Ret.).  The parties' second mediation with Judge Gandhi occurred on August 9, 2021, exactly 2 weeks prior to the scheduled Pretrial Conference in this case.  As

11

noted above, the August 9th mediation resulted in a signed MOU between the parties.  *See* Sayas Decl., at ¶¶ 16, 28 & 30.

The ultimate product of the parties' hard-fought negotiations is the proposed Class Action Settlement Agreement executed by the parties on August 20, 2021.  It is the result of highly-contentious, informed, arms-length negotiations, between counsel with substantial litigation experience, who are fully familiar with the legal and factual issues in this case in light of nearly complete trial preparations, and have specific experience litigating complex and class action cases.  Of significant importance is the fact that the settlement process was presided over by a well-respected private mediator.  *See Carter v. Anderson Merchandisers, LP*, Nos. EDCV 08-00025-VAP (OPx) and EDCV 09-0216-VAP (OPx), 2010 WL 144067, at *6 (C.D. Cal. Jan. 7, 2010) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").  The non-collusive nature of the Settlement supports preliminary approval.

B.   The Proposed Settlement Has No Obvious Deficiencies

The proposed settlement here has no obvious deficiencies.  As detailed below, the settlement amount of $20,000,000 represents approximately 40 – 50% of what the class expected to obtain following a successful trial and judgment, an amount well within the range of what has been considered fair in other, comparable class settlements.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (finding recovery of one-sixth of potential recovery to be fair); *Greko v. Diesel U.S.A., Inc.*, No. 10-cv-02576 NC, 2013 WL 1789602, at *5 (N.D. Cal. Apr. 26, 2013) (24 percent); *Glass v. UBS Fin. Serv., Inc.*, No. 06-cv-4068 MMC, 2007 WL 221862, at *4 (N.D. Cal. Jan. 26, 2007) (25 to 35 percent).

There are also no obvious deficiencies in the scope of the release.  The release is entirely consistent with well-settled case law.  *See Hesse v. Sprint Corp.*, *supra*, 598 F.3d at 590 ("A settlement agreement may preclude a party from bringing a related claim in the future even though the claim was not presented and might not have been presentable in the class action, but only where the released claim is based on the identical factual predicate as that underlying the claims in the settled class action."); *Landy v. Pettigrew Crewing, Inc.*, *supra*, 2020 WL 8614204,

12

at *9 (preliminarily approving class settlement release that is "solely limited to the facts alleged in the Complaint"); *Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 303 (E.D. Cal. 2011) (granting preliminary approval where released claims were "based on the facts alleged" in the complaint and thus appropriately tracked the breadth of plaintiffs' allegations in the action and the settlement did not release "unrelated claims").

Nor are there any deficiencies in Class Counsel's anticipated request for an award of attorneys' fees and costs not to exceed one-third of the Class Settlement Fund, subject to the Court's approval.  *See Collins v. Cargill, supra*, 274 F.R.D. at 299, 302 (in granting preliminary approval, Court found no obvious deficiencies in proposed settlement in which attorneys' fees of up to 55% of the gross settlement amount would be sought, since such attorney-fee award would be "subject to court approval at the final approval hearing").

It is an accepted practice in wage-and-hour class action settlements to award attorneys' fees to Class Counsel based on a total settlement value agreed upon by the parties.  *See, e.g., Staton v. Boeing Co.*, 327 F.3d 938, 967-72 (9th Cir. 2003).[4]  While the Ninth Circuit's benchmark for reasonable fees under the percentage method is 25% of the gross settlement amount, the 25 percent benchmark should be adjusted when special circumstances indicate that a larger fee award is appropriate, in consideration of the results achieved, the riskiness of prosecuting the litigation, the value of class benefits obtained, and the financial burden carried by class counsel in prosecuting the case on a contingency basis.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002).

---

[4] It is well-established that when a litigant's efforts create or preserve a fund from which others derive benefits, the court may spread litigation costs proportionately among all the beneficiaries to compensate those who created the fund.  *Boeing Co. v. Van Gernert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than…his client is entitled to a reasonable attorneys' fee from the fund as a whole."); *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 393-94 (1970) (discussing acceptance of awarding attorneys' fees and expenses from a settlement where "litigation has conferred a substantial benefit on the members of an ascertainable class").

13

In analogous wage-and-hour lawsuits, courts in this district have awarded attorneys' fees like those requested here. *See, e.g., Taylor v. Shippers Transp. Express, Inc.*, No. CV 13-02092-BRO (PLAx), 2015 WL 12658458, at *14 (C.D. Cal. May 14, 2015) (approving attorneys' fee award of one-third of $11.4 million settlement as fair and reasonable, in light of prolonged litigation, high risks associated with litigating through trial on contingency basis, and high value of monetary settlement); *Boyd v. Bank of Am. Corp.*, No. SACV 13-0561-DOC, 2014 WL 6473804, at *9 (C.D. Cal. Nov. 18, 2014) (approving award of one-third of $5.8 million settlement fund in wage-and-hour class action; "award higher than the benchmark is well supported by Class Counsel's work on this matter and the exceptional result obtained for the Class"); *Fernandez v. Victoria's Secret Stores, LLC*, No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34% of $8.5 million common fund as fees in wage-and-hour class settlement, as it "appropriately award[ed] class counsel for their risk in taking this case on a contingency basis and litigating the case with diligence and skill").

In light of similar considerations in the present case, Class Counsel's request for an award of attorneys' fees equaling one-third of the common fund would not fall beyond the range of reasonable awards as to warrant an obvious deficiency in the Settlement.

C.    The Proposed Settlement Does Not Provide Improper Preferential Treatment

The proposed Settlement here does not provide preferential treatment to any Class Members. Rather, as described above, a uniform formula is applied that fairly and accurately compensate Class Members based on their length of service and amount of actual work performed for Defendants. Such uniform application of a payment formula is illustrative of a non-preferential distribution of a common fund class settlement. *See Landy v. Pettigrew Crewing, Inc., supra*, at *7 (finding *pro rata* allocation of common settlement fund to class members "based upon the number of pay periods each Class Member worked for Defendant" to be "fair, reasonable, and adequate"); *Nen Thio v. Genji, LLC*, 14 F.Supp.3d 1324, 1334-35 (N.D. Cal. 2014) (*pro rata* distribution of common settlement fund to class members based on amount of work performed does not grant undue preferential treatment to any class members).

14

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE

Moreover, the fact that the Settlement authorizes Class Counsel to apply for Service Awards to the Plaintiffs and certain active class members does not invalidate the Settlement on account of preferential treatment. The Ninth Circuit has expressly recognized that service awards in a class action are permissible and do not render a settlement unfair or unreasonable. *See Nen Thio*, *supra*, 14 F.Supp.3d at 1335 (*citing Staton v. Boeing Co.*, *supra*, 327 F.3d at 977). Instead, such Service Awards are routine, appropriate, and serve public policy by encouraging individuals to come forward to protect the rights of others, while at the same time compensating class representatives for their time, effort and inconvenience in representing the collective interests of the members of the certified class. *See*, *e.g.*, *Glass v. UBS Fin. Serv., Inc.*, *supra*, 2007 WL 221862, at *17 (awarding four service awards of $25,000 each in FLSA overtime collective action); *Barcia v. Contain-A-Way, Inc.*, No. 07CV938-IEG-JMA, 2009 WL 587844, at *7 (S.D. Cal. Mar. 6, 2009) (approving $25,000 incentive award in wage-and-hour class action; citing cases). That there is no indication of improper preferential treatment supports preliminary approval of the Settlement.

### D.    The Proposed Settlement Falls Within the Range of Possible Approval

To determine whether a proposed settlement falls within the range of possible approval at the preliminary approval stage, the Court applies a two-step analysis. First, "[t]o evaluate the range of possible approval criterion, which focuses on substantive fairness and adequacy, courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Vasquez v. Coast Valley Roofing, Inc.*, 670 F.Supp.2d 1114, 1125 (E.D. Cal. 2009). As part of this assessment, the Court "compare[s] the value of the settlement against the expected recovery at trial." *Harris v. Vector Marketing Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *9 (N.D. Cal. 2011).

The parties' proposed settlement falls well within the range of reasonable settlements as a percentage of potential recovery at trial. Here, the damages analysis conducted by Class Counsel and their retained experts estimated a potential recovery for the class in the range of $40,000,000 to $50,000,000. These figures were strongly disputed, and were alleged to be substantially lower, by XPO. As such, the proposed settlement amount of $20,000,000

15

constitutes between 40 – 50% of the potential maximum recovery at trial, and the percentage is likely higher if Defendants' damage estimates prevailed. *See* <u>Sayas Decl.</u>, at ¶ 43. Such a percentage falls well within the range of fairness warranting approval in other comparable class actions. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, *supra*, 213 F.3d at 459 (finding recovery of one-sixth of potential recovery to be fair); *Greko v. Diesel U.S.A., Inc.*, *supra*, 2013 WL 1789602, at *5 (24 percent); *Glass v. UBS Fin. Serv., Inc.*, *supra*, 2007 WL 221862, at *4 (25 to 35 percent).

As a secondary matter, the Court may also preview the factors that ultimately inform final approval, such as, "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *See Harris v. Vector Marketing Corp.*, *supra*, 2011 WL 1627973, at *9 (*citing Churchill Village v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). Although the Court undertakes a more in-depth investigation of these factors at the final approval stage, these factors "inform whether the Settlement Agreement falls within the 'range of possible approval.'" *Harris*, *supra*, 2011 WL 1627973, at *9. These factors also weigh in favor of preliminary approval in this action.

### 1. Strength of Plaintiffs' Case and Amount Offered in Settlement

The Settlement has substantial value and provides substantial economic benefits to the Class. Given the inherent risks associated with any trial, let alone a complicated and hotly disputed trial such as would take place in this action, such monetary payment is substantial and potentially exceeds the relief the Class could receive in a successful, let alone an unsuccessful, trial. *See* <u>Sayas Decl.</u>, at ¶ 38 – 43.

### 2. Risk, Expense, Complexity, and Likely Duration of Further Litigation

This factor also weighs heavily in favor of preliminary (and, ultimately, final) approval of the Settlement. The risk, expense, complexity, and likely duration of further litigation are very significant. Defendants have raised a number of arguments and defenses, which they

16

would raise at trial and on appeal.  Even assuming Plaintiffs can establish liability, the parties disagree about whether there are any recoverable damages, how to calculate damages, and the amounts of each category of damages.  In the absence of a settlement, the parties would present factual and expert testimony on each of these issues, and there is considerable risk that the trier of fact would resolve these issues against Plaintiffs and the Class.

There are also significant risks involving the question of collectability of any judgment obtained following trial, in light of the unresolved question of joint liability on the part of XPO Logistics Cartage, LLC's parent corporations also named as defendants in this case.  There is a possibility that a judgment imputing liability to only Defendant XPO Logistics Cartage, LLC would limit Class Members' ability to collect a judgment.  In contrast, the Settlement guarantees recovery for the Class Members.

Additionally, if this matter went to verdict, a lengthy appeal period would certainly result.  The vigorous defense put up by XPO's counsel strongly suggest that such appeal would require considerable effort and costs for Plaintiffs and the Class.  Hundreds of thousands of dollars in out-of-pocket expenses have already been incurred in pursuing claims on behalf of the Class.  Settlement will conserve the resources of the parties and the Court.  The Settlement guarantees a substantial recovery for the Class now while obviating the need for a lengthy, complex, and uncertain trial.  *See Harris v. Amgen, Inc.*, No. CV 07-5442 PSG (PLAx), 2017 WL 6048215, at *3-4 (C.D. Cal. Apr. 4, 2017).

### 3. *Risk of Maintaining Class Action Status Throughout Trial*

As noted above, following class certification, Defendants sought leave for interlocutory appeal of the certification order from the Ninth Circuit.  *See* <u>Sayas Decl.</u>, at ¶ 20.  This strongly suggests that Defendants would again appeal the certification order following trial should Plaintiffs prevail.  Accordingly, although Plaintiffs believe that they would be successful in maintaining class action status through trial, there is a substantial risk that Defendants might prove successful in attacking class certification.

### 4. *Extent of Work Completed, and Proximity to Trial*

This matter has been intensely litigated, as even a cursory review of the Court's docket reveals. This Settlement was reached after the end of the discovery period. A total of 52 depositions have been taken of Plaintiffs, Class Members, Defendants' employees, and the parties' respective experts. Defendants have produced hundreds of thousands of pages of documents for review by Class Counsel. The parties designated numerous experts, who analyzed these documents and generated multiple reports and had their depositions taken. Numerous motions were filed in Court, including discovery motions, two separate class certification motions, multiple motions to dismiss, three motions for reconsideration, competing motions for partial summary judgment, and numerous motions *in limine* submitted in anticipation of trial. Pre-trial documents were finalized and filed, and the parties were nearly finished with preparations for trial. *See* Sayas Decl., at ¶¶ 11 − 37.

Given the advanced stage of these proceedings, there can be no question that Class Counsel has a clear view of the strengths and weaknesses of the Class's claims and damage approaches. Extensive discovery has been conducted, and trial preparations were made in this matter to allow counsel to adequately investigate the pertinent legal and factual issues and enable them to recommend the Settlement.

### 5. *Experience and Views of Counsel*

Class Counsel have substantial experience serving as counsel in numerous class actions, including complex cases. *See* Sayas Decl., at ¶¶ 3 − 8. They fully endorse the Settlement as fair, reasonable and adequate to the Class. *See* Sayas Decl., at ¶¶ 38 − 43.

### E. The Proposed PAGA Settlement is Reasonable and Within the Range of Possible Approval

The Settlement provides a reasonable allocation of $150,000 of the Class Settlement Amount as payment for civil penalties under PAGA, a matter well within the discretion of the trial judge ruling on preliminary approval here. *See Cal. Lab. Code § 2699(e)(1)* (court exercises discretion in awarding civil penalties under PAGA); *see also Nordstrom Commission Cases*, 186

18

Cal.App.4th 576, 589 (Cal.Ct.App. 2010) (settlement approved despite no allocation for PAGA civil penalties).

## VI.    THE PROPOSED CLASS NOTICE IS APPROPRIATE, AND A FAIRNESS HEARING SHOULD BE SCHEDULED

Reasonable notice must be provided to the Class to allow class members an opportunity to object to the Settlement. *See Fed. R. Civ. Proc. Rule 23(e)* (reviewing court "must direct notice in a reasonable manner to all class members who would be bound" by proposed settlement).

### A.    The Proposed Class Notice Contains All of the Required Components

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and come forward and be heard.'" *Churchill Village v. Gen. Elec.*, *supra*, 361 F.3d at 575; *see also Landy v. Pettigrew Crewing, Inc.*, *supra*, at *9-10 (approving settlement notice that informs class of: nature of litigation and the relevant class; terms of the settlement; monetary amounts to be provided to class members; relevant deadlines, including deadline to object; consequences of taking or foregoing various options available; and the date, time and place of the Fairness Hearing). Here, the proposed Settlement Notice to Class Members, attached as Exhibit "3" to the Settlement, is clear, precise, informative, and meets the above-described standards.

### B.    The Method of Notice is Appropriate

Further, the proposed notice program provides the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." *See Fed. R. Civ. Proc. Rule 23(c)(2)(B).* As reflected in the proposed notice plan detailed in the Settlement, the Class Members will be notified by first class mail, which is an avenue for notice that has been approved by various courts. *See, e.g.*, *White v. NFL*, 822 F. Supp. 1389, 1400 (D. Minn. 1993) (notice by mail to identified Class members and publication once in *USA Today* "clearly satisfy both  Rule 23 and due process requirements"); *Lake v. First Nationwide Bank*, 156 F.R.D. 615, 628 (E.D. Pa. 1994) (approving as reasonable notice by third class mail to identified Class members and publication two times in the national edition of USA Today).  All that is required is for Class Members to submit a Form W-9 with

19

their names, addresses, and tax identification numbers. *See* "Settlement Notice," attached as Exhibit "3" to <u>Settlement</u>, at p. 2-3. The Settlement Administrator will conduct skip-trace search efforts to obtain updated addresses, if needed, and will then re-mail the Settlement Notices to those updated addresses. *See* <u>Settlement</u>, § III. D. The Settlement Administrator will also provide reminder notices to Class Members who, within 15 days of the deadline, have not submitted a W-9. *See id.*

C.   <u>The Anticipated Costs of Administration are Reasonable</u>

CPT Group, who was previously approved by this Court to disseminate the class certification notice in this case, is also an experienced settlement administrator. *See* <u>Declaration of Julie Green in Support of Motion for Preliminary Approval of the Class Action Settlement</u>, attached as Exhibit "6" to <u>Settlement</u>. CPT Group will perform all work associated with administering the settlement procedures described in the parties' Settlement, including providing notices, handling questions on settlement amounts, and distributing settlement payments. *See* <u>Settlement</u>, § III. D. The Settlement has allotted a budget not to exceed $50,000. *See* <u>Settlement</u>, § III. A. 3. This amount is appropriate in light of the number of Class Members, the settlement notices to be sent to the Class, and the extent of the work to be performed in completely administering the settlement for the Class. *See* <u>Settlement</u>, § III. D; "Class List," attached as Exhibit "1" to <u>Settlement</u>; "Settlement Notice," attached as Exhibit "3" to <u>Settlement</u>.

## VII.   CONCLUSION

For all the above-stated reasons, Plaintiffs respectfully request that the Court grant this Motion and enter an Order: (1) granting preliminary approval of the Settlement; (ii) scheduling a final Fairness Hearing and establishing all related deadlines; (iii) directing that Notice be provided to the Class in accordance with the notice plan; and (iv) ordering a stay of all proceedings in this action until the Court renders a final decision regarding approval of the Settlement.

Dated: August 20, 2021

**LAW OFFICES OF C. JOE SAYAS, JR.**

By:  /s/ C. Joe Sayas, Jr.
       C. JOE SAYAS, JR.
       Attorneys for Plaintiffs Angel Omar Alvarez,
       Alberto Rivera, Fernando Ramirez, Juan
       Romero and Jose Paz

Dated: August 20, 2021

**BUSH GOTTLIEB, ALC**

By:  /s/ Julie Gutman Dickinson
       JULIE GUTMAN DICKINSON
       Attorneys for Plaintiffs Angel Omar Alvarez,
       Alberto Rivera, Fernando Ramirez, Juan
       Romero and Jose Paz

Dated: August 20, 2021

**OSBORN LAW P.C.**

By:  /s/ Daniel Osborn
       DANIEL OSBORN
       Attorneys for Plaintiffs Jairo Moreno
       Martinez, Jesus Carreon and Rodolpho
       Moreno

Dated: August 20, 2021

**RG LAWYERS, LLP**

By:  /s/ Solomon E. Gresen
       SOLOMON E. GRESEN
       Attorneys for Plaintiff Edgar Mendoza

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS'
MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT,
AND APPROVAL OF FORM AND MANNER OF NOTICE

## **Local Rule 5-4.3.4(a)(2) Attestation**

I hereby attest that the other signatories listed, on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: August 20, 2021          **LAW OFFICES OF C. JOE SAYAS, JR.**

By:     /s/ C. Joe Sayas, Jr.
          C. JOE SAYAS, JR.
          Attorneys for Plaintiffs Angel Omar
          Alvarez, Alberto Rivera, Fernando
          Ramirez, Juan Romero and Jose Paz

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND APPROVAL OF FORM AND MANNER OF NOTICE